**SIERRA CLUB, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**TUOLUMNE RIVER EXPEDITIONS, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 83–7584, 83–7699.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1984.

Submission Vacated Sept. 19, 1984.

Resubmitted and Reassigned Feb. 19, 1985.

Decided March 6, 1985.

As Amended May 8, 1985.

Michael H. Remy, Remy & Thomas, Sacramento, Cal., for petitioner Tuolumne River Expeditions, Inc.

Suzanne D. Case, Robert B. Thum, Pettit & Martin, San Francisco, Cal., for petitioner Sierra Club.

Lee C. White, Peter S. Leyton, White, Fine & Verville, Washington, D.C., for intervenors Turlock & Modesto Irr. Dist.

William H. Satterfield, Jerome M. Feit, Joshua Z. Rokach, Bonnie Cord, Marilyn M. Gossel, Washington, D.C., Thomas Berliner, San Francisco, Cal., for respondent F.E. R.C.

David W. Hamilton, Deputy Atty. Gen., San Francisco, Cal., amicus for the People of the State of Cal.

Before PHILLIPS [*], POOLE and CANBY, Circuit Judges.

POOLE, Circuit Judge:

The Sierra Club and Tuolumne River Expeditions, Inc. petition for review of a Federal Energy Regulatory Commission (Commission) order granting the Modesto and Turlock Irrigation Districts (MID, TID) and the City and County of San Francisco a preliminary permit for the Clavey-Wards Ferry hydroelectric project. We affirm the Commission's order.

I.

The Commission is responsible for licensing the construction and maintenance of hydroelectric facilities built on waters under federal jurisdiction. 16 U.S.C. § 796, *et seq.* License applicants must provide the Commission with information, including feasibility studies, planned compliance with state laws and other relevant data. 16 U.S.C. § 802; 18 C.F.R. § 4.1 *et seq.*

Since the license application procedure can be costly and protracted, the Commission is authorized to issue preliminary permits, 16 U.S.C. § 797(f), the "sole purpose [of which is to maintain] priority of application for a license" during a period, not to exceed three years, in which the applicant may prepare a detailed license application. *Id.* at § 798; *Delaware River Basin Commission v. F.E.R.C.*, 680 F.2d 16, 17 (3d Cir.1982); *City of Bedford v. F.E.R.C.*, 718 F.2d 1164, 1166 (D.C.Cir.1983).

On June 25, 1976, MID and TID applied for a preliminary permit for the Clavey-Ward's Ferry project, a 400 million watt hydroelectric project to be located in California on the Tuolumne River near its confluence with the Clavey River, an area now known for its outstanding whitewater rafting and kayaking opportunities. San Francisco later intervened as a joint applicant. The entire project is to be built on federal lands managed by the Forest Service and the Bureau of Land Management (BLM). As originally proposed, the project would include the Jawbone Diversion Dam and reservoir, the 5.2 mile Jawbone Ridge Tunnel, the Hunter Point Dam, the 2 mile Clavey Power Conduit, the Ward's Ferry Dam, and the Clavey and Ward's Ferry powerhouses. The Sierra Club, Tuolumne River Expeditions Inc., and the State of California intervened to oppose the application.

On April 6, 1983, the Commission issued a preliminary permit, which did "not authorize the construction of any project works," and which provided that no feasibility studies could be conducted until the applicants

---

[*] The Honorable Harry Phillips, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

entered into a memorandum agreement with the Forest Service.

■ Petitioners raise two issues on appeal.[1] First, they claim that the Commission should have prepared an environmental impact statement before issuance of the preliminary permit. Second, they argue that the Raker Act vests sole jurisdiction over the project in the Secretary of the Interior. Neither claim warrants reversal.

## II.

Petitioners contend that the Commission violated the National Environmental Policy Act (NEPA) by failing to prepare an environmental impact statement (EIS) before it issued the preliminary permit. This contention is without merit.

■ NEPA requires the preparation of an EIS for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). This circuit has held that an EIS must be prepared for actions that *may* significantly affect the quality of the human environment. *Foundation for North American Wild Sheep v. United States Department of Agriculture,* 681 F.2d 1172, 1177 n. 24 (9th Cir.1982). An agency's determination that a particular project requires no EIS will be upheld unless it is unreasonable.

*Confederated Tribes and Bands of the Yakima Indian Nation v. F.E.R.C.,* 746 F.2d 466, 475 (9th Cir.1984).

■ The Commission correctly concluded that no EIS was required before issuance of a preliminary permit in this case. Petitioner's argument to the contrary rests on the mistaken belief that the permit alone allows the applicants to enter federal land and conduct feasibility tests which may disturb the environment.

The sole purpose of the preliminary permit is to maintain the applicant's priority of application for a license. 16 U.S.C. § 798. The permit itself does not allow the applicant to conduct any studies on federal lands. The Commission's order denying rehearing clearly states that no feasibility studies can be conducted until "a memorandum of agreement has been signed with the Forest Service, the agency responsible for managing the lands under study."[2] The Forest Service Manual also requires that a permittee "obtain a permit from the Forest Service before beginning most on-the-ground investigation." FSM § 2771.2. Petitioners can only enter federal land and conduct ground-breaking activities after obtaining Forest Service and BLM special use permits. Thus, these agencies, not the Commission, will be responsible for evaluating the environmental impact of activities authorized by their special use permits.

---

1. Following oral argument in this case, Congress adopted the California Wilderness Act of 1984, Pub.L. No. 98–425, 98 Stat. 1619 (1984), designating 83 miles of the main stem of the Tuolumne River as part of the National Wild and Scenic Rivers System. We vacated submission on September 19, 1984, and invited the parties to submit their views concerning the impact on this case of the new legislation.

We have decided that although the California Wilderness Act precludes development on the main stem of the Tuolumne, it does not necessarily prohibit development on its tributaries. Congress expressly stated that

Nothing in this Act shall preclude the licensing, development, operation, or maintenance of water resources facilities on those portions of the North Fork, Middle Fork or South Fork of the Tuolumne or Clavey Rivers that are outside the boundary of the wild and scenic river area as designated in this section.

California Wilderness Act of 1984, Pub.L. No. 98–425, § 201, 98 Stat. 1619, 1632 (1984). The plain language of the Act persuades us that it does not of its own force preclude all studies within the scope of the permit and render the permit invalid. We are satisfied, therefore, that the issues before this court remain ripe for resolution.

2. The memorandum agreement was signed on August 1, 1983, and it provides that "Any tests requiring a disturbance of land surface, vegetation removal, construction or sampling must be authorized by special or land use permits from the Federal agencies." The Irrigation districts submitted a detailed environmental assessment describing the work they intended to do. The special use permits were granted on September 21, 1983.

Since the preliminary permit alone did not allow the applicants to conduct any studies on federal lands, no EIS was required. In *State of South Dakota v. Andrus*, 614 F.2d 1190 (8th Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980), a similar case in another circuit, the state of South Dakota argued that an EIS was required before the Department of Interior issued a mineral patent. The court rejected this claim because "the granting of a mineral patent does not enable the private party ... to do anything." *Id.* at 1194. The court stated further that "[if the private party] decides to build the mine many actions may be necessary. For example, the claims at issue will presumably need permits from the Forest Service for roads, water pipelines and railroad rights of way." *Id.* at 1195.

Similarly, in *Burbank Anti-Noise Group v. Goldschmidt*, 623 F.2d 115 (9th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981), we held that an EIS was not required when the federal government helped a private group purchase an existing airport. We stated that "[a]n EIS is not required ... when the proposed federal action will effect no change in the status quo." *Id.* at 116; *see Committee for Auto Responsibility v. Solomon*, 603 F.2d 992, 1001–03 (D.C.Cir. 1979), *cert. denied* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 599 (1980).

The issuance of a preliminary permit in this case does not change the status quo. It does not allow the applicant to construct any facilities or conduct any tests without further permission from other federal agencies. Under such circumstances, no EIS is required before issuance of a preliminary permit.

■ Petitioners also raise two claims that can be disposed of quickly. First, they argue that under the Council on Environmental Quality (CEQ) regulations the Commission was required to perform an Environmental Assessment (EA). 40 C.F.R.

§ 1501.4. Even assuming that an EA was required, the Commission's permit in fact fulfilled that requirement. An EA must "briefly provide sufficient evidence and analysis for determining whether to prepare an [EIS]." 40 C.F.R. § 1508.9(a)(1). The Commission's detailed order satisfies this standard.

■ Next, petitioners claim that the Commission was required to hold an evidentiary hearing. However, the Commission's own regulations do not require such a hearing. 18 C.F.R. § 4.34. Moreover, CEQ regulations only direct the agency to hold a hearing "whenever appropriate." 40 C.F.R. § 1506.6(c). No hearing was appropriate here because there was no "substantial environmental controversy" concerning the preliminary permit, whose sole purpose was to maintain petitioners' priority in the event of possible subsequent licensing applications.

### III.

■ Petitioners argue that the Commission's issuance of the preliminary permit conflicts with the Raker Act, 38 Stat. 242 (1913). The Raker Act was passed to provide needed water for San Francisco by authorizing the flooding of Hetch Hetchy Valley and the creation of the Hetch Hetchy Reservoir in Yosemite National Park. *See City of Palo Alto v. City and Cty. of San Francisco*, 548 F.2d 1374, 1376 (9th Cir.1977). The Act granted rights of way to the city of San Francisco for the construction of a dam across the Tuolumne River in Yosemite National Park. Raker Act, § 1. In return, it placed construction of the dam and other necessary facilities under the supervision of the Secretaries of Interior (for construction in Yosemite National Park) and Agriculture (for construction in Stanislaus National Forest). *See* Raker Act § 4.

When the Federal Power Act was passed in 1920, Congress specifically stated that it did not repeal or modify the provisions of the Raker Act. 16 U.S.C. § 823.

Petitioners argue that, because the facilities proposed here are extensions of the original Hetch Hetchy system, they are subject to the Raker Act and are therefore under the sole jurisdiction of the Secretary of Interior, not the Commission. Petitioners conclude that the Commission therefore has no authority to issue a preliminary permit for the Clavey-Ward's Ferry project. Petitioners' argument is without merit.

The Commission ultimately rejected petitioners' Raker Act argument as premature. In its order denying rehearing, the Commission stated:

> We do not, however, need to reach a final decision on the merits of the Sierra Club's jurisdictional [Raker Act] arguments because the type, size [and] location of the proposed project works cannot be delineated with certainty until the feasibility studies that would be conducted under the [preliminary] permit have been completed.

We agree. Petitioners' position depends on the close physical and functional relationship of the Clavey-Ward's Ferry project with the original Hetch Hetchy facilities. Yet the project plans supporting its claim are all subject to change during the preliminary permit planning stage. In fact, major changes have already been announced in the proposed project.[3]

The nature and degree of the relationship between the project facilities and the original Hetch Hetchy system cannot be known until final plans for the project have been developed. We will not require the Commission to deny a preliminary permit on speculative grounds that may not materialize when project plans are complete, or to forecast the result of a planning process that has not yet begun. *See City of Bedford v. F.E.R.C.,* 718 F.2d 1164, 1168 (D.C. Cir.1983) (the Commission need not investigate at preliminary permit stage whether potential licensee meets all qualifications for licensing). The Commission cannot know whether the Raker Act may bar it from licensing the project until the project plans are complete. The risk that the project finally proposed may prove to be unlicensable is one to be borne by the permittees, who in this case have been willing, even eager, to bear it.

Since the effect of the Raker Act on the licensing procedures for this project need not be determined at the preliminary permit stage, we need not decide whether the Raker Act in fact applies to construction outside the particular rights of way granted under the Act.[4] We note, however, that the Raker Act has never been held to bar other hydroelectric projects on the Tuolumne that have operated in coordination with existing Raker Act facilities. *See California v. Federal Power Commission,* 345 F.2d 917, 924 (9th Cir.), *cert. denied,* 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965) (reviewing FPC licenses for the New Don Pedro Dam, outside the original Raker Act rights of way, and immediately downstream from the site of the proposed Ward's Ferry Dam).

## IV.

Because the preliminary permit did not itself authorize ground-breaking or other activities that might affect the environment, no EIS was required before its issuance. Moreover, the Commission properly declined to determine whether the Raker Act may ultimately modify the final licens-

---

3. Two of the previously proposed dams have been dropped from the project plans. The modified project now includes the Jawbone Dam and Reservoir, the 13 mile Paper Cabin Ridge Tunnel, the Ponderosa Dam and the 390 MW Ponderosa powerhouse. As modified, the project has been redesignated the "Ponderosa Project."

4. The Raker Act, by its own terms, granted specific rights of way, not to exceed 250 feet in width, to the City of San Francisco. Raker Act, § 1. Those rights of way were defined by maps submitted to the Secretary of Interior within 3 years of the Act's passage, i.e. by 1916. The Secretary was authorized to permit changes in the original rights of way prior to the final completion of the original project. Raker Act, § 2.

ing procedures applicable to this project until after the project plans have been completed. The Commission's issuance of the preliminary permit is AFFIRMED.