KOOTENAI TRIBE OF IDAHO, Boise County, Idaho, by and through the Boise County Board of Commissioners; Valley County, Idaho by and through the Valley County Board of Commissioners; Idaho State Snowmobile Association; Illinois Association of Snowmobile Clubs; American Council of Snowmobile Association; Little Cattle Company Limited Partnership; Highland Livestock and Land Company; and Boise Cascade Corporation, Plaintiffs,

v.

Ann VENEMAN, in her official capacity as the Secretary of Agriculture; Daniel Glickman, in his official capacity as the Secretary of Agriculture; Michael Dombeck, in his official capacity as the Chief Forester of the USDA Forest Service; United States Department of Agriculture; and United States Forest Service, Defendants,

and

Idaho Conservation League, Idaho Rivers United, Sierra Club, the Wilderness Society, Oregon Natural Resources Council, Pacific Rivers Council, Natural Resources Defense Council, Defenders of Wildlife, and Forest Service Employees for Environmental Ethics, Defendant–Intervenors.

No. 01CV10.

United States District Court, D. Idaho.

April 5, 2001.

Raymond B Ludwiszewski, Peter E Seley, Gibson Dunn & Crutcher, Washington, DC, for Kootenai Tribe of Idaho, Illinois Association of Snowmobile Clubs, Highland Livestock and Land Company.

Theresa L Gardunia, Boise County Prosecuting Attorney, Idaho City, ID, Raymond B Ludwiszewski, Peter E Seley, Gibson Dunn & Crutcher, Washington, DC, for Boise County.

Raymond B Ludwiszewski, Peter E Seley, Gibson Dunn & Crutcher, Washington, DC, Richard T Roats, Valley County Prosecuting Attorney, Cascade, ID, for Valley County.

Raymond B Ludwiszewski, Peter E Seley, Gibson Dunn & Crutcher, Washington, DC, Paul A Turcke, Moore Smith Buxton & Turcke, Boise, ID, for Blueribbon Coalition, Inc., Idaho State Snowmobile Associates, Inc., American Council of Snowmobile Associations.

Raymond B Ludwiszewski, Peter E Seley, Gibson Dunn & Crutcher, Washington, DC, LeRoy W Wilder, Portland, OR, for Little Cattle Company Limited Partnership.

Jeffrey Daymon Neumeyer, Boise Cascade Corporation, Legal Dept, Boise, ID, Raymond B Ludwiszewski, Peter E Seley, Gibson Dunn & Crutcher, Washington, DC, for Boise Cascade Corporation.

D Marc Haws, AUSA, U.S. Attorney's Office, Boise, ID, for Daniel Glickman.

D Marc Haws, AUSA, U.S. Attorney's Office, Boise, ID, John W Watts, U.S. Dept of Justice, Environment and Natural Resources, General Litigation Section, Andrea L Berlowe, U.S. Dept of Justice, En-

vironment & Natural Resources Division, General Litigation Section, John C Cruden, U.S. Dept of Justice, Environment & Natural Resources Division, Washington, DC, for Michael Dombeck, Department of Agriculture, Forest Service, US.

Douglas L Honnold, Timothy J Preso, Sanjay Narayan, Earthjustice Legal Defense Fund, Bozeman, MT, Nathaniel S.W. Lawrence, Natural Resources Defense Council, Olympia, WA, for Idaho Conservation League, Idaho Rivers United Inc., Sierra Club, Wilderness Society, Oregon Natural Resources Council, Pacific Rivers Council, Natural Resources Defense Council.

Scott W. Reed, Coeur d'Alene, ID, Patrick Parenteau, S Royalton, VT, Forest Service Employees for Environmental Ethics.

### ORDER

LODGE, District Judge.

Pending before the Court in the above entitled matter is Plaintiffs'[1] Motions for Preliminary Injunction. Docket No. 19, 45–2. Having reviewed all briefing submitted, as well as other pertinent documents in the Court's file, and having heard oral arguments the Court issues the following order.

## I. INTRODUCTION AND BACKGROUND

The Forest Service has been studying and evaluating roadless areas for nearly thirty (30) years. The process began in 1972 with a study called the Roadless Area Review and Evaluation ("RARE I"). *See California v. Block,* 690 F.2d 753, 758 (9th

Cir.1982). A more comprehensive study called the Roadless Area Review and Evaluation II ("RARE II") was commenced in 1977. *Id.* This evaluation process resulted in the Forest Service's development of an "inventory" of roadless areas larger than five-thousand (5,000) acres. *Id.*

In RARE II, the Forest Service attempted to allocate inventoried roadless areas among various management regimes. *Id.* The Ninth Circuit Court of Appeals held, in part, that the Forest Service's action violated the National Environmental Policy Act ("NEPA") since it failed to include a site-specific analysis of the environmental impact that the management regimes would have on each specific roadless area. *Id.* Since *Block,* management decisions regarding inventoried roadless areas have been made on a site-specific basis as part of the forest planning process.

Through RARE II and the forest planning process, 9.3 million acres of national forests within Idaho have been identified as inventoried roadless areas. Docket No. 25, Turcke Aff., Ex. C, Roadless Area Conservation Rule, Final Environmental Impact Statement ("FEIS") at 3–4. Outside of Alaska, Idaho has the highest total inventoried roadless areas in the nation, with Montana being next highest at 6.3 million acres. *Id.* Idaho also has the highest percentage of inventoried roadless areas. Seventeen percent (17%) of Idaho's total land area is located within national forest inventoried roadless areas. *Id.* at A–3. The next highest state is Utah, with 7.3 percent. *Id.* at A–4. Of the 9.2 million acres of inventoried roadless areas within Idaho, 5,666,000 are currently allocated to

---

1. Plaintiffs are individually identified as the Kootenai Tribe of Idaho; Boise County, Idaho; Valley County, Idaho; Blueribbon Coalition, Inc.; Idaho State Snowmobile Association; Illinois Association of Snowmobile Clubs; American Council of Snowmobile Associations; Little Cattle Company Limited Partnership; Highland Livestock and Land Company; and Boise Cascade Corporation.

a management prescription that allows road construction and reconstruction. *Id.* at A–3.

## II. FACTUAL AND PROCEDURAL HISTORY

The facts in this case are largely undisputed by the parties. On October 13, 1999, President Clinton directed the Forest Service to develop and prepare for public comment regulations to end road construction and to protect inventoried and uninventoried roadless areas across the entire national forest system. On October 19, 1999, in response to the Presidential directive, the Forest Service issued a "Notice of Intent to Prepare an Environmental Impact Statement." The NOI provided for scoping comments to be filed with the Forest Service within the following sixty (60) days.[2] Despite repeated requests from a number of parties, no request to extend this scoping period was granted.

On December 30, 1999, the State of Idaho filed its first suit against the United States Forest Service for failure to provide meaningful opportunity to participate in the process as required by the National

Environmental Protection Act ("NEPA") and the National Forest Management Act ("NFMA"). On January 21, 2001, the Forest Service file a Motion to Dismiss the State's Complaint pursuant to Fed. R.Civ.P. 12(b)(1) arguing that the Court lacked subject matter jurisdiction because the case was not ripe for review since the agency had not taken any final agency action. On February 18, 2000, the Court granted the Forest Service's Motion finding no "final agency action" and after finding that the exceptions to the final agency action requirement were not applicable.[3] *State of Idaho, et al. v. United States Forest Service,* CV99–611–N–EJL, February 18, 2000, Memorandum Decision and Order.

In early May, 2000, the Forest Service released its 700–page DEIS, together with its proposed rule. 65 Fed.Reg. 30,276.[4] Sixty-nine days were allowed for comments. Despite substantial public reaction, the Forest Service again denied all requests for extensions of time. Docket No. 20 at 3.

On November 13, 2000, the Forest Service published its final EIS ("FEIS").[5] *Id.* And on January 5, 2001, the Forest Ser-

---

**2.** In a letter to Forest Service staff dated October 28, 1999, Forest Service Chief Michael Dombeck instructed his staff to accelerate NEPA procedures, authorizing them to "take whatever executive actions are necessary" to complete the DEIS by March 2000, warning that "[w]e cannot afford to waste a single day." Letter from Michael Dombeck, Chief, USDA Forest Service, to Forest Service staff (Oct. 28, 1999) (cited in State of Idaho Comments, Docket No. 24, Neumeyer Aff., Ex. C at 1).

**3.** Specifically, this Court noted that it was unable to find a single case wherein a challenge to the scoping process was considered ripe for judicial review. *State of Idaho, et al. v. United States Forest Service,* CV99–611–N–EJL, February 18, 2000, Memorandum Decision and Order at 6.

**4.** The Proposed Rule purposed to regulate 54.3 million acres of "Inventoried Roadless Areas" and declared that at least 43 million acres of land would be immediately subject to prohibitions on road construction upon issuance of the Final Rule. 65 Fed.Reg. 30,276, 30,288. Moreover, the Proposed Rule provided for regulation of millions of additional acres of non-inventoried, unidentified "unroaded areas where conservation of roadless characteristics may be desirable." 65 Fed. Reg. 30,277, 30,288. Finally, the Proposed Rule subjected the Inventoried Roadless Areas in the Tongass National Forest to these same processes as part of the five year review of the April 1999 Tongass Land and Resource Management Plan. 65 Fed.Reg. 30,288.

**5.** It is undisputed that the FEIS differed from the DEIS in several aspects. First, the FEIS broadened the scope of the prohibition

vice released the Final Rule and Record of Decision that would implement the Roadless Initiative on May 12, 2001.[6] Docket No. 25, Turcke Aff., Ex. A; 66 Fed.Reg. 3244–273, 36 C.F.R. § 294. The Final Rule adopted the FEIS's expansion of regulated areas that were not included in the DEIS and, unlike the proposal in the DEIS, applied immediately to the Tongass National Forest. Docket No. 20 at 4.

On January 8, 2001, Plaintiffs filed the present action seeking declaratory judgment and injunctive relief against the Federal Government for violations of the Administrative Procedure Act ("APA"), NEPA, NFMA, the Organic Administration Act ("OAA"), the Multiple–Use Sustained Yield Act ("MUSYA"), Title I, § 101(d) of the Omnibus Consolidated Appropriations Act of 1997 ("Section 108"), the Wilderness Act, and the National Historic Preservation Act ("NHPA").[7] On February 20, 2001, Plaintiffs filed the present Motion for Preliminary Injunction (Docket No. 19).

## III.  STANDARD OF REVIEW

Plaintiffs' claims are all governed by the Administrative Procedure Act (APA),

which provides for limited judicial review of agency action. *See* 5 U.S.C. §§ 702, 706. *See Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 376–78, 109 S.Ct. 1851, 1860–62, 104 L.Ed.2d 377 (1989); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983); *Friends of Clearwater v. Dombeck,* 222 F.3d 552, 560 (9th Cir.2000). Under the APA, the Court may overturn agency action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or in excess of its statutory jurisdiction or authority. 5 U.S.C. § 706(2)(A), (C); *Idaho Farm Bureau v. Babbitt,* 58 F.3d 1392, 1401 (9th Cir.1995). The standard of review is "highly deferential" and presumes an agency's action to "be valid." *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir. 1976). A court reviewing an APA challenge, therefore, begins with the "presumption to which administrative agencies are entitled—that they will act properly and according to law." *FCC v. Schreiber,* 381 U.S. 279, 289, 85 S.Ct. 1459, 1470, 14 L.Ed.2d 383 (1965).

---

rule to apply to all inventoried roadless areas, not just the unroaded portions of inventoried roadless areas. *See* Docket No. 25, Turcke Aff., Ex. C, at XI. Second, it altered the preferred alternative, choosing prohibition alternative 3, which prohibits road construction, road reconstruction, and timber harvest except for stewardship purposes. *See* Docket No. 24, Neumeyer Aff., Ex. E at S–5. Third, the FEIS eliminated all analysis relating to the procedural rule. *See* Docket No. 25, Turcke Aff., Ex. C, at XI. Instead, the procedural rule was incorporated in the final Forest Planning Regulations adopted on November 9, 2000. Finally, the size of the inventoried roadless areas changed—the DEIS stated that Inventoried Roadless Areas totaled 54.3 million acres of land, the FEIS added an additional 4.2 million acres of Inventoried Roadless Areas to that total. Docket No. 20 at 3–4.

**6.**  On January 20, 20001, President Bush issued an order postponing by sixty (60) days the effective date of all of the Clinton Administration's 11th hour regulations and rules that had not yet been implemented. Pursuant to that order, Secretary Veneman postponed the Final Rule's effective date until May 12, 2001. *See* 66 Fed.Reg. 8899 (Jan. 29, 2001).

**7.**  Specifically, Plaintiffs seek an order from this Court declaring that the Final Rule is in violation of NEPA, APA, NFMA, OAA, MUSYA, Section 108, the Wilderness Act, and NHPA and, as a result, is null and void and of no legal force and effect. In addition, Plaintiffs want a mandatory injunction issued requiring Defendants to withdraw the Final Rule. Docket No. 1 at 39–40.

Section 705 of Title 5 of the United States Code permits a reviewing Court to postpone the effective date of agency action pending conclusion of the review proceedings. The test to be applied for issuing such a stay or injunction pending judicial review is the same as that applied to a request for preliminary injunction.

■ In determining whether to award a preliminary injunction, the court must balance the plaintiff's likelihood of success against the relative hardship to the parties. *See e.g., Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999); *Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1118 (9th Cir.1999). Specifically, Plaintiffs must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of the hardships tips in its favor. *See Idaho Sporting Congress v. Alexander,* 222 F.3d 562, 565 (9th Cir.2000). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Id.*

## IV. ANALYSIS

Plaintiffs seek a preliminary injunction challenging the promulgation of the Roadless Rule as violative of, *inter alia,* NEPA.[8] The Intervenors[9] resist the issuance of a preliminary injunction arguing that, as a threshold matter, the Court lacks jurisdiction. The Intervenors fur-

ther resist the issuance of a preliminary injunction on the basis that Plaintiffs' challenges are without merit and that enjoining the Roadless Rule would cause irreparable harm to the environment. The Federal Defendants take no position on the merits of the case but argue that agency rulemaking is entitled to substantial discretion and that injunctive relief is not necessary prior to May 12, 2001.

### 1. The Court Has Jurisdiction Over Plaintiffs' Claims

■ As a threshold matter, this Court must first address the Intervenors' challenge to the jurisdiction of this Court. The FSEEE Intervenors argue that this Court lacks jurisdiction over Plaintiffs' NEPA claim because the Roadless Rule did not require an EIS.[10] Docket No. 43 at 3–9. Both the ICL and FSEEE Intervenors argue that Plaintiffs, having shown no concrete injury, lack standing, and the Court thus lacks subject matter jurisdiction. Docket Nos. 43 at 10–13, 55 at 1–4. Finally, in determining jurisdiction, it is the obligation of the Court to raise ripeness issues sua sponte if not raised by the parties.

### 1. Plaintiffs Have Standing

The Intervenors contend that the Plaintiffs do not have standing to challenge the adequacy of the Government's environmental impact statement regarding the Roadless Rule. Docket Nos. 43 at 10–13; 55 at 1–4. Plaintiffs respond that such

---

8. As stated *supra,* Plaintiffs' Complaint contains additional claims but the instant motion is premised solely on their NEPA claims. Docket No. 19 at ¶ 2.

9. The Intervenors are individually identified as the Idaho Conservation League ("ICL") and the Forest Service Employees for Environmental Ethics ("FSEEE").

10. The ICL Intervenors have raised this same issue in challenging Plaintiffs' likelihood of success on the merits. Docket No. 55 at 7–12. The arguments of both parties will be addressed at this time, in the context of the jurisdictional challenge.

arguments are without merit. Docket No. 53 at 3.

■ To satisfy Article III's standing requirements, a Plaintiff must show:

(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth. Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). In addition to these constitutional requirements, a plaintiff bringing suit under the APA for a violation of NEPA must show that his alleged injury falls within the "zone of interests" that NEPA was designed to protect. *Douglas County v. Babbitt*, 48 F.3d 1495, 1499 (9th Cir.1995). The Intervenors argue that Plaintiffs have met neither the constitutional nor prudential standing requirements.

### a. Injury in Fact

■ The right claimed by Plaintiffs is, *inter alia*, the right to have the Forest Service analyze reasonable alternatives, conduct a meaningful notice and comment process, and adequately analyze cumulative impacts, before making a decision affecting the environment, as required by NEPA.[11] Plaintiff complains that the Roadless Rule will prevent the enactment of any active forest management plan requiring road construction or reconstruction and/or timber harvesting *despite* opinion of local officials who deem such management techniques critical to restoring and maintaining forest health and reducing the risk of potentially catastrophic wildfires in key watersheds.[12] In *Mumma*, 956 F.2d at 1514,[13] the Ninth Circuit found this type of harm to be acknowledged by Congress and identified violations of NEPA's procedural requirements to be distinct and palpable harms—as opposed to abstract, conjectural or hypothetical.[14] That Court went on to find that, pursuant to NEPA and the NFMA, procedural violations must be

11. The statutes sought to be enforced in this case, of course, are NEPA and the NFMA (via Section 10 of the APA). Section 10(a) of the APA provides that "a person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In cases arising under the APA, the standing requirement has been read to mean that plaintiffs must show " 'the challenged action ha[s] caused them injury in fact' and that the injury is 'to an interest arguably within the zone of interests to be protected or regulated by the statutes that the agencies were claimed to have violated.' " *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1514 n. 12 (9th Cir.1992).

12. *See e.g.*, Docket No. 24, Neumeyer Aff., Ex. H at 25–29.

13. In *Mumma*, the defendants asserted that the plaintiffs lacked standing to challenge a

recommendation not to designate certain inventoried roadless areas as "wilderness areas" because the injuries asserted were not within the scope of NEPA, the injuries were too remote and speculative, and the plaintiffs could not establish that their personal interests were affected by the agency action.

14. *See also Trustees of Alaska v. Hodel*, 806 F.2d 1378, 1380–82 (9th Cir.1986) (holding that because "NEPA is essentially a procedural statute designed to ensure that environmental issues are given proper consideration in the decisionmaking process," injury alleged to have occurred as a result of violating this procedural right confers standing.); *Friends of the Earth v. United States Navy*, 841 F.2d 927, 931 (9th Cir.1988) (noting that the Ninth Circuit "has loi.g recognized that failure to follow procedures designed to ensure that the environmental consequences of a project are adequately evaluated is a sufficient injury in fact to support standing").

deemed *immediate,* and not speculative. *Id.* at 1516.

Finally, the *Mumma* Court found that so long as plaintiffs can allege that the injury would be felt by individual members, as opposed to a diffuse, collective interest, personal injury is sufficient to confer standing. Here, Kootenai Tribe and recreational group plaintiffs argue that they have a concrete interest in recreational, aesthetic, spiritual, and other uses of inventoried roadless areas and from the harm to those areas that would result from the decline in active forest management under the Roadless Rule. Docket No. 1 ¶¶ 4, 7–10. Boise and Valley Counties argue they have a concrete interest in regulating local land use to protect the land's environmental features. *Id.* at ¶¶ 5–6. Boise Cascade and the livestock company plaintiffs argue that they have a concrete interest in lands and leaseholds held in proximity to inventoried roadless areas that will be threatened with environmental harm if the Roadless Rule is not enjoined. *Id.* at ¶¶ 11–13.

Based on the Ninth Circuit's holding in *Mumma,* and Plaintiffs' showing that they have a "sufficient geographical nexus to the site of the challenged project that [they] may be expected to suffer whatever environmental consequences this project may have," *City of Davis v. Coleman,* 521 F.2d 661, 671 (9th Cir.1975),[15] the Court finds that Plaintiffs have sufficiently met the personal injury requirement set forth by the United States Supreme Court.

### b. Fairly Traceable and Likely to be Redressed

Intervenors next argue that Plaintiffs have shown no causal connection between the Roadless Rule and their alleged injuries and that Plaintiffs cannot show that their injury will be redressed by a favorable decision of this Court.

In the instant case, the alleged injury—wildfires, disease outbreaks, and insect infestation, resulting from national changes in active local management plans prohibiting road construction, reconstruction and/or timber harvesting, purportedly as result of statutory violations—would not have occurred *but for* the decision of the Forest Service in pushing the implementation of the Roadless Rule on a "fast track." In this respect, the fact that the alleged injury may never occur is irrelevant. The asserted injury is that environmental consequences might be overlooked and reasonable alternatives ignored as a result of the deficiencies in the FEIS and ROD. *See Mumma,* 956 F.2d at 1518. *See also International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795, 811–12 (D.C.Cir.1983) ("the suggestion that effective enforcement of [the Act] will not have [effect] directly contravenes the congressional judgment underlying the Act"); *Munoz–Mendoza v. Pierce,* 711 F.2d 421, 428 (1st Cir.1983).

Based on the Ninth Circuit's holding in *Mumma,* this Court finds that Plaintiffs have satisfied the three prongs necessary to confer standing.

### 2. The Roadless Rule Required an EIS

■ Finally, the Intervenors argue that no EIS was required for the Roadless Rule. Docket Nos. 43 at 7–11; 55 at 3–9. Specifically, the Intervenors argue that the Roadless Rule is not subject to NEPA and Plaintiffs' claims fail under *Douglas County,* 48 F.3d at 1505, because the Roadless Rule does not commit resources to some

---

**15.** *See Douglas County,* 48 F.3d at 1500 n. 5 (stating that the geographic nexus test is the same as the concrete interest test).

affirmative human development of the environment, does not change existing environmental conditions, and does not alter the environmental status quo. Plaintiffs argue that the cases cited by the Intervenors are inapposite because the Forest Service is required under the NFMA, 16 U.S.C. § 1600, et seq. and the Department of Agriculture's implementing regulations to prepare an EIS for any addition, modification, removal or continuation of the decisions embodied in a forest plan.[16] Docket No. 53 at 2.

42 U.S.C. § 4332(c) requires all agencies of the federal government, "to the fullest extent possible," to comply with EIS requirements when they take "major federal actions significantly affecting the quality of the human environment." NFMA and the Department of Agriculture's implementing regulations require the Forest Service to prepare an EIS for any addition, modification, removal or continuation of a decision embodied in a forest plan. 36 C.F.R. §§ 219.10(b), 219.12(a)(2000); *superseded by* 36 C.F.R. § 219.9(d)(2001); Forest Service Handbook, Title 1909.15, § 20.6, *see also Oregon Natural Res. Council,* 109 F.3d at 524 ("In carrying out the planning process, the Forest Service is also re-quired to abide by certain procedural requirements imposed by the NEPA. One of these is the requirement that an EIS be prepared ... [u]nder 36 C.F.R. § 219.10(b).").

There is no doubt in the Court's mind that the instant case is distinguishable from those cases cited by Intervenors that stand for the proposition that NEPA procedures do not apply to federal actions that do nothing to alter the natural physical environment, conserve the environment, or prevent human interference with the environment.[17] Promulgation of the Roadless Rule will add to, modify and remove decisions embodied in forest plans governing the management of the national forests. Plaintiffs argue that the blanket prohibition on road construction, reconstruction, and timber harvesting (subject to minor exceptions) in inventoried roadless areas departs significantly from nearly every local forest plan. The Rule acknowledges this in the Record of Decision wherein it notes that the rule "supersede[s] existing forest plan management direction." 66 Fed.Reg. 3250 (Jan. 12, 2001).

While it is true that the ultimate goal of the Roadless Rule is to "provide lasting

---

16. *See* 36 C.F.R. §§ 219.10(b), 219.12(a) (2000); *superseded by* 36 C.F.R. § 219.9(d) (2001) ("The responsible official must ... prepare an environmental impact statement to add, modify, remove, or continue in effect the decisions embodied in a [forest] plan"); Forest Service Handbook, Title 1909.15, § 20.6; *see also Oregon Natural Res. Council v. Lowe,* 109 F.3d 521, 524 (9th Cir.1997) ("In carrying out the planning process, the Forest Service is also required to abide by certain procedural requirements imposed by the NEPA. One of these is the requirement that an EIS be prepared ... [u]nder 36 C.F.R. § 219.10(b)").

17. *See Burbank Anti–Noise Group v. Goldschmidt,* 623 F.2d 115, 116 (9th Cir.1980) (federal loans for continued operation of airport does not trigger EIS); *Sierra Club v.*

*F.E.R.C.,* 754 F.2d 1506, 1509 (9th Cir.1985) (preliminary permit for hydro-dam does not trigger NEPA); *Upper Snake River v. Hodel,* 921 F.2d 232, 235 (9th Cir.1990) (discretionary agency action that does not alter status quo does not trigger NEPA); *National Wildlife Fed'n v. Espy,* 45 F.3d 1337 (9th Cir.1995) (transfer of land from federal to private ownership without change in land use not subject to NEPA); *Douglas County,* 48 F.3d at 1505 (protection of critical habitat for endangered species does not trigger NEPA requirements); *Bicycle Trails Council of Marin v. Babbitt,* 82 F.3d 1445, 1446 (9th Cir.1996) (closure of bicycle trail does not trigger EIS); *Northcoast Envtl. Ctr. v. Glickman,* 136 F.3d 660, 669 (9th Cir.1998) (conservation of rare timber stands does not require EIS).

protection for inventoried roadless areas within the National Forest System," *id.*, the Roadless Rule is not an action that does not alter the "environmental status quo." In fact, the Roadless Rule, in changing or limiting existing active management in the national forest, drastically alters the current status quo. For example, officials on the Payette National Forest in Idaho will not be able to implement a forest wide plan to restore ponderosa pine forest to a more natural condition in at least half of the acreage in six separate projects because treatment requires new road construction and helicopter logging is not economically feasible as an alternative. Docket No. 24, Neumeyer Aff., Ex. H at 25. In California, officials on the Shasta–Trinity National Forest in California have quashed plans to reconstruct and maintain old jeep trails to provide short-term access for mechanical thinning, firebreaks for controlling prescribed fires, and as access points for suppressing potential wildfire in the Lower McCloud River Watershed—a watershed containing old-growth forest habitat critical to the survival of the threatened northern spotted owl and other species that depend on old-growth forest. *Id.* at 25–26. Finally, in Colorado, on the Routt National Forest, forest officials are concerned about protecting private property and homes immediately adjacent to dense lodgepole pine forests located in roadless areas that are currently at risk of insect infestation and subsequent stand-replacing fire. The forest areas are in need of thinning but the new rule prevents

local officials from constructing temporary roads into the areas and other harvesting methods are not economically feasible. *Id.* at 26.

While the Court acknowledges the common sense principle that NEPA does not require an EIS every time the Government decides *not* to do something;[18] an action that serves to "leave nature alone" by preventing the enactment of land management techniques that provide for road construction, reconstruction or timber harvesting, despite recommendations of local officials, will certainly have a demonstrable impact on the physical environment—the world around us, so to speak—and is the very action upon which Congress intended NEPA to apply.[19] To find otherwise would be to allow the Government to "shunt aside" their responsibilities in the "bureaucratic shuffle" and "accomplish a goal" without allowance of the procedure required by law. *See Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 777, 96 S.Ct. 2430, 2433, 49 L.Ed.2d 205 (1976). Based on the foregoing, the Court finds Intervenors' argument challenging the jurisdiction of this Court without merit.

### 3. The Matter is Ripe for Judicial Review

The parties have not raised the question of ripeness. However, the Court has been put in an unusual situation with this case and finds it necessary to address this issue. As previously noted, the Forest Service released the Final Rule and

---

18. Section 102(2)(c) of NEPA requires federal agencies to prepare an EIS for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332. The Council on Environmental Quality regulations implementing NEPA define the term "human environment" to mean "the natural and physical environment and the relationship of people with that environment." 40 C.F.R. § 1508.14.

19. In *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772, 103 S.Ct. 1556, 1560, 75 L.Ed.2d 534 (1983), the United States Supreme Court held that Congress intended NEPA to apply only where a federal action will have a demonstrable impact on the physical environment, "the world around us, so to speak."

Record of Decision that would implement the Roadless Initiative on January 5, 2001. Docket No. 25, Turcke Aff., Ex. A; 66 Fed.Reg. 3244–273, 36 C.F.R. § 294. However, prior to its implementation, President Bush issued an order postponing the effective date of the rule by sixty (60) days. As a result of that order, Secretary Veneman postponed the Final Rule's effective date until May 12, 2001, pending full review of the rule, *See* 66 Fed.Reg. 8899 (Jan. 29, 2001). During the course of the instant litigation, the Government has taken no position on the merits of Plaintiffs case and has asked this Court to postpone ruling on the preliminary injunction until the new administration has had the opportunity for a full review and has the opportunity to inform the Court of its position on the preliminary injunction motion.

■ Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. This deficiency must be raised sua sponte if not raised by the parties. *Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir.1990). The Supreme Court has noted that "a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until … its factual components [have been] fleshed out [ ] by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm them."

Plaintiffs are challenging the Roadless Rule, arguing that the rule-making process was completed in violation of, *inter alia,* NEPA. While the Government has presently withdrawn its position on the Roadless Rule, there is no dispute that the Final Rule and Record of Decision have been published in the Federal Register, and but for the present stay, would be in effect. Accordingly, waiting until the Government takes "some further position" on the Roadless Rule is not an adequate remedy. Therefore, this Court finds that the action is ripe for review.

### 2. Likelihood of Success on the Merits

The ICL Intervenors argue that Plaintiffs have failed to establish a likelihood of success on the merits because the Roadless Rule did not require the preparation of an EIS and because Plaintiffs' challenges are meritless. The ICL Intervenors first argument was addressed by this Court at § IV.A., *supra,* accordingly, the Court will proceed by addressing ICL's second argument.

### 1. Plaintiffs' Procedural Challenges

Intervenors argue that Plaintiffs have failed to demonstrate a likelihood of success on the merits because Plaintiffs' allegations of procedural violations are without merit. Specifically, Intervenors argue (1) that the Forest Service considered a reasonable range of alternatives, (2) that the Forest Service's public comment process was more than sufficient, and (3) that the EIS did not omit reasonably foreseeable cumulative impacts. Plaintiffs argue that the Intervenors have failed to rebut strong evidence that the Federal Defendants' rulemaking resulted in numerous egregious violations of NEPA and the APA.

■ The Ninth Circuit employs a "rule of reason" that asks whether an EIS contains a "reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Oregon Envtl. Council v. Kunzman,* 817 F.2d at 484, 492 (9th Cir.1987). A reviewing judge must make "a pragmatic judgment whether the EIS's form, content and preparation foster both informed decision-making and

informed public participation... Once satisfied that a proposing agency has taken a 'hard look' at a decision's environmental consequences, the review is at an end." *Block,* 690 F.2d at 761.

### a. Range of Alternatives

█ Plaintiffs argue that the Forest Service's failure to analyze reasonable alternatives violates NEPA. Docket No. 20 at 9. Specifically, Plaintiffs argue that the Forest Service pre-determined the outcome of the alternative analysis by failing to consider a broad range of alternatives. *Id.* at 9–11. The Intervenors argue that the Forest Service considered a large number and range of alternatives to the Roadless Rule. Docket No. 55 at 12.

The alternative section is "the heart of the environmental impact statement," 40 C.F.R. § 1502.14; hence, "[t]he existence of a viable but unexamined alternative renders an environmental impact statement inadequate." *Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1057 (9th Cir.1985). And, while the practicalities of the requirement of are difficult to define, NEPA requires all agencies of the Federal Government, to the fullest extent possible, to "[s]tudy, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E). The Ninth Circuit has instructed district courts, in determining whether a particular EIS has met this demand, to ascertain (1) whether the federal agency has sufficiently detailed information to make its decision in light of potential environmental consequences and (2) whether the federal agency has provided the public with information on the environmental impact of the proposed action and encouraged public participation in the development of that information. *See e.g.,*

*Mumma,* 956 F.2d at 1520; *Kunzman,* 817 F.2d at 492; *Citizens for a Better Henderson,* 768 F.2d at 1056. As a result, an agency must look at every reasonable alternative, with the range dictated by the "nature and scope of the proposed action," *Block,* 690 F.2d at 761, and sufficient to permit a reasoned choice and informed decision making. *See Save Lake Washington v. Frank,* 641 F.2d 1330, 1334 (9th Cir.1981).

Plaintiffs' contention is that Defendants have flatly failed to satisfy this NEPA requirement because the FEIS considers only three action alternatives—all of which ban road construction and reconstruction, and a single "no action alternative"—which was included as a required point of reference rather than a seriously considered alternative. Plaintiffs argue that the alternatives predetermined the outcome of the alternative analysis and served to justify a decision already made rather than assess the environmental impact of proposed agency actions. Docket No. 20 at 9–11. Intervenors respond by arguing that the alternative analysis was sufficient because the DEIS presented a combination of 80 different alternative options. Docket No. 55 at 12.

It appears to the Court that absent the elements directed solely at the Tongass National Forest and various procedural elements, which were ultimately moved into a separate rule and not included in the FEIS, the DEIS actually only examined three action alternatives. Each of three alternatives banned road construction and reconstruction in inventoried roadless areas and only differed as to the level of restriction imposed on timber harvesting. The Court recognizes that an agency need not evaluate alternatives that are inconsistent with policy objectives, *see Seattle Audubon Soc'y v. Moseley,* 80 F.3d 1401, 1404 (9th Cir.1996), however, there is no evi-

dence before the Court why the Forest Service failed to consider alternatives that are consistent with the stated purpose of the rule—"to prohibit activities that pose the greatest risk to the social and ecological values of inventoried roadless areas."[20] Docket No. 24, Neumeyer Aff., Ex. E at S–2.

██ In *Block*, the Ninth Circuit criticized the Forest Service for ending the decisional process inquiry at "the beginning" by "uncritically assum[ing] that a substantial portion of the RARE II areas should [contain a ban on road building] and consider[ing] only those alternatives with that result." *Id.* 690 F.2d at 767. Because an agency may not define the objectives of its action in terms so unreasonably narrow that only one alternative would accomplish the goals of the agency action, *see City of Carmel–by–the–Sea v. United States Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir.1997), the Court finds it likely that Plaintiffs would succeed on the merits of their claim that the Forest Service violated NEPA by failing to analyze a reasonable range of alternatives.

### b. Public–Comment Process

██ Next, Plaintiffs argue that the Forest Service's notice and comment process was legally insufficient and grossly inadequate. Docket No. 20 at 11. The Intervenors argue that Forest Service satisfied all notice and comment requirements in promulgating the Roadless Rule. Docket No. 55 at 14.

The Forest Service is required to "involve the public in preparing and implementing their NEPA procedures," 40 C.F.R. § 1506.6, and invite the participation of affected state and local governments, as well as Indian Tribes. 40 C.F.R. § 1501.7(a)(1). This requires agencies to notify the public of a rulemaking, allow an opportunity to comment meaningfully on the proposed rule, and consider these comments. 5 U.S.C. § 553(b)-(c).

It appears from this record that the message disseminated during the development of the EIS was perceived by the public to be, at best, confusing and, at worst, inadequate.[21] Public comment re-

---

**20.** For example, it is unclear why the Forest Service could not, or did not, consider alternatives along the lines suggested by Plaintiffs. That is, an alternative evaluating individual inventoried roadless areas and developing alternatives consistent with these areas' differing specific characteristics and/or an alternative in which roads, temporary or otherwise, could be built for forest management to reduce the risks of disease, insect infestations, and catastrophic wildfire on an ongoing, preventive basis, rather than merely in response to imminent threats to life or property.

**21.** *See e.g.,.* Docket No. 22, Munson Aff. at ¶ 6 (Rule "definitions will have varied significance on individual sites."); Docket No. 23, Dryden Aff., Ex. N, Boise Cascade Corporation June 20, 2000, Letter to Chief, U.S. Forest Service regarding failure of the Forest Service to supply requested FOIA documents, at 3 ("These materials are needed to ... provide meaningful and complete comments at

the upcoming National Forest level hearings ... [and] to help ... prepare comprehensive comments in response to the DEIS ... Our ability to comment has already been impacted and will be severely limited if the materials requested four months ago are not promptly provided."); Docket No. 24, Neumeyer Aff., Ex. C, State of Idaho Comments, at 3 ("[T]he Forest Service has failed to comply with its FOIA regulations relative to a request from Idaho. Accordingly, the State of Idaho's comments are once again based on an evaluation of incomplete information conducted within a compressed timeframe."); *id.*, Ex. D, Society of American Foresters Comments, at 2 ("The DEIS is poorly developed and offers little in a pursuit of understanding the implications of this rule."); *id.*, Ex. J, American Forestry and Paper Association Comments, at 59 ("The Forest Service failed to provide the public with adequate information on the roadless area initiative to allow informed public comment on the scope of issues to be addressed or

flects concerns regarding the identity, and definition, of "unroaded areas" and inventoried roadless areas;[22] the inadequacy of information presented during the scoping process, including the inadequacy of the Forest Service staff who conducted public comment meetings during this process;[23] the failure to engage in meaningful consultation with the Kootenai Tribe;[24] and the brief comment periods, and failure to grant reasonable requests for time.[25] Docket No. 20 at 11–15. Ignoring most of these

arguments, the Intervenors argue that Plaintiffs "cannot credibly contend that they lacked information about the location of roadless areas [because] for more than a decade, Plaintiffs have participated in numerous public processes concerning Forest Service roadless areas that provided them with detailed information about the location of roadless areas, and still more information has been readily available from the Forest Service for years." Docket No. 55 at 15–16. Intervenors further submit that

on the significance of issues related to the proposed action."); Docket No. 25, Turke Aff. Ex. C., Valley County Comments, at 209–210, ("It is difficult to follow the process when it is a continually moving target, apparently being done to enhance confusion.")

**22.** *See e.g.,* Docket No. 24, Neumeyer Aff., Ex. A, American Motorcyclist Association's Comments, at 1 ("[T]he lack of maps or statements regarding where in each State the areas are located prohibits meaningful or specific comment by the public."); *id.,* Ex. B, Boise Cascade Corporation Comments, at 7–8 ("The concept of "unroaded areas" in the procedural alternative is vague and poorly defined and will keep the Forest Service in legal gridlock."); *id.,* Ex. C, State of Idaho Comments, at 3 ("[The State of Idaho is] deeply troubled that [the Forest Service] has not provided accurate maps of the land that will be shut down by this proposal. Accurate maps of all inventoried roadless areas are not available. There are *no maps* of the uninventoried areas ... It is beyond question, both as a matter of common sense and law, that a proposal impacting land management and use must begin with a map showing *what land* will be impacted."); *id.,* Ex. D, Society of American Forester's Comments, at 7–12 ("The rule does not specify what constitutes a "roaded" roadless area ... The agency needs to define "other unroaded areas" ... The Agency needs to identify and quantify the unroaded portions of inventoried roadless areas."); *id.,* Ex. J, American Forestry & Paper Association's Comments, at 3–4 ("The DEIS *fails to provide any individual roadless area descriptions.*")

**23.** *See e.g.,* Docket No. 21, Wheaton Aff. at ¶ 7 ("At the [local scoping] meeting ..., the United States Forest Service District Ranger could not tell tribal representatives any specific in-

formation regarding the impacts the President's Roadless Initiative would have on the rights of tribal members. [The representative] could not identify any specific areas or roads that would be affected by the President's action. The meeting did not inform anyone of what might be expected from implementation of the President's Roadless Initiative regarding our tribal rights."); Docket No. 24, Neumeyer Aff., Ex. F, Subcommittee Report, dated February 18, 2000, at 3 (Noting "problems stemming from the Washington Office requirement to hold hundreds of public meetings at the forest service level while not giving the [local Forest Service representatives] sufficient information on the initiative, greatly restricting their ability to answer questions."); *id.,* Ex. J, American Forestry & Paper Association's Comments, at 59 ("[D]uring the scoping stage, the Forest Service could not provide information on the location and area of the national forest lands affected by this proposal. The Forest Service is still unable to identify all the lands that will ultimately be impacted by this proposal ... [T]he Forest Service personnel at these [local scoping] meetings were no better informed than were members of the public.").

**24.** Docket No. 21, Wheaton Aff.

**25.** Docket No. 24, Neumeyer Aff., Exs. A at 1 (American Motorcyclist's Association's renewed request); B at 3 (Boise Cascade Corporation's renewed request); C at 1 (State of Idaho's renewed request); D at 9–10 (Society of American Forester's comment regarding denial of request); J at 2 (American Forestry & Paper Association's request); Docket No. 25, Turcke Aff., Ex. C at 209 (Valley County request).

Plaintiffs' complaints about the Forest Service's unreasonably brief comment periods are meritless because "NEPA regulations require 45 days for public comment [and][t]he Forest Service provided 69 days of public comment on the DEIS, and accepted still more comment on the FEIS before issuing its decision." *Id.* at 18.

While it is true that NEPA regulations set forth a 45 day requirement for public comment, that 45 day comment period is statutorily contemplated as a minimum time frame to be set apart for meaningful disclosure. At this point, the evidence is that the Forest Service did not, and in fact could not, provide such meaningful disclosure as descriptions and maps of the areas to be impacted by the rule were unavailable [26] and Forest Service representatives were ill-prepared to answer the questions and concerns of the general public.[27] Neither the number of meetings nor the volumes of comments are instructive by themselves if the evidence suggests that the decision making process was used to rationalize or justify decisions already made. NEPA requires full disclosure of

all relevant information before there is meaningful public debate and oversight.

The Court previously admonished the parties that time could not be of the essence on something of this magnitude and the action taken strongly suggests that this was a political decision pre-determined in its outcome.[28] The Court acknowledges that the roadless issues involve many different well intentioned views but this only strengthens the argument that the best interests of the country and environment need to be given due consideration.

The FEIS is approximately 700 pages in length and is applicable to two percent (2%) of the land mass of the United States—twenty-eight (28%) of National Forest System lands. One million six hundred thousand comments were submitted in response to the roadless proposal. In the arguments before this Court, it was pointed out that all of the public meetings in Idaho occurred within 12 business days of the end of the first 60–day comment period. It was further pointed out that many of the comments were received within the last week of the time given and no

---

**26.** State maps of the potentially regulated areas were not made available until January 18, 2000, nearly a month after the NEPA scoping process and after the public comment period had ended. Docket No. 20 at 3.

**27.** Such ill-preparation does not surprise the Court given the fact that similar, although much smaller federal actions, have taken time frames of up to six years to complete. For example, compare the Columbia Basin Ecosystem Management Project, a project of approximately the same size as this, from initiation to the final EIS, six years. Here, about twelve months. The Boone National Forest salvage sale, one and one-half years in scoping alone. The Black Hills Forest Plan revision, a project to apply to 1.2 million acres, from initiation to final EIS, six years, six months.

**28.** *See e.g.*, Docket No. 24, Neumeyer Aff., Ex. F, Subcommittee Report, at 2 (identifying (1) a telling internal Forest Service e-mail, dated

6–9–99 from Deputy Chief Jim Furnish to the Chief's top assistant, Chris Wood, wherein the desire to move quickly is emphasized, in its statement "[I]f we wait until the planning rules are in place and plan revisions occur, it will be too late and the quality of the product will be quite varied. If we're going to look at roadless separate and apart from the roads policy issue, then we should put together a team and address it head on, not indirectly through forest planning ...;" (2) a constant reference throughout the documents to the need for "permanent protection" of roadless areas that appears to reveal a predetermined outcome of the rule-making; and (3) a fax from Dinah Bear to Chris Wood, dated 9/09/99 implying that a preferred alternative was in development concurrent with the President's announcement, well in advance of the public scoping period conducted during the initial 60–day comment period.)

responses were provided. The Court cannot fathom how such representations can support a finding that the Forest Service gave the public's concerns due consideration. In fact, this is strong evidence that because of the hurried nature of this process the Forest Service was not well informed enough to present a coherent proposal or meaningful dialogue and that the end result was pre-determined. Justice hurried on a proposal of this magnitude is justice denied.

Based on the foregoing, the Court conclusively finds that the comment period was grossly inadequate and thus deprived the public of any meaningful dialogue or input into the process—an obvious violation of NEPA.

### c. The Omission of Reasonably–Foreseeable Cumulative Impacts

■■ Finally, Plaintiffs argue that the Forest Service's failure to adequately analyze the cumulative impacts of its proposal violates NEPA. Docket No. 20 at 15. Specifically, Plaintiffs argue that the FEIS provides only the most cursory, generalized discussion of impacts. *Id.* at 16. The Intervenors argue that Plaintiffs have failed to show that the FEIS needed additional analysis on any of the initiatives that ran concurrently with the Roadless Rule. Docket No. 55 at 18.

The duty to discuss cumulative impacts in an Environmental Impact Statement is mandatory. *See* 40 C.F.R. § 1502.16. The Ninth Circuit has held that an EIS must include a "useful analysis of the cumulative impacts of past, present and future projects." *Carmel-by-the Sea,* 123 F.3d at 1160.

Despite the Intervenors arguments that the cumulative impacts of the initiatives addressing roads and inventoried roadless areas are either "not predicable" or "not significant," the Forest Service itself recognized in the FEIS that "the Roadless Rule together with the other proposed and finalized rules and policies could have cumulative effects." FEIS, Vol. 1 at 3–396. Accordingly, the Forest Service was required to include a useful analysis of these projects. A cursory and general discussion of the potential impacts will not do. Conclusory remarks are similarly insufficient.

Based on the foregoing, the Court finds it likely that Plaintiffs would succeed on the merits of their claim that the Forest Service's failure to adequately analyze the cumulative impacts of its proposal violates NEPA.[29]

### 3. Possibility of Irreparable Injury

■■ Having previously found that Plaintiffs have demonstrated a strong likelihood of success on the merits, under the Ninth Circuit's test for equitable relief Plaintiffs need only make a minimal showing of harm to justify an injunction. *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir.1988).

---

**29.** Plaintiffs additionally argued that under *Block,* 690 F.2d 753, the Forest Service violated NEPA by failing to perform site-specific analysis. Docket No. 20 at 6. Intervenors argued that no-site specific analysis was required because the Roadless Rule made no "critical decisions" with regard to site-development and made no "irreversible and irretrievable commitment" of the availability of resources to a project at a particular site. Docket No. 55 at 11. It is not clear, at this time, whether the Roadless Rule is the type of concrete development proposal that warrants such detailed analysis or whether the detailed analysis should be deferred until a critical decision as been made to act on site development. However, based on this Court's previous finding that Plaintiffs have otherwise established a high likelihood of success of establishing a number of NEPA violations, the Court need not resolve this issue at this time.

Plaintiffs argue that both the merits and the balance of harms weigh strongly in favor of an injunction halting implementation of the Roadless Rule. Docket No. 20 at 17–18. The ICL Intervenors argue that issuance of an injunction will do more environmental harm than good and that Plaintiffs' harms are illusory. Docket No. 55 at 4–6. The Court finds, however, there is merit in the wisdom of the First Circuit Court of Appeals analysis that the purpose of NEPA "is to require consideration of environmental factors before project momentum is irresistible, before options are closed, and before agency commitments are set in concrete." *Massachusetts v. Watt*, 716 F.2d 946, 953 (1st Cir.1983).

Nevertheless, after reviewing the record and hearing oral argument on the motion, the Court is of the opinion that a decision as to whether or not there has been irreparable injury is arguably premature. At the hearing on this motion, counsel for the Government *committed* to the Court that the Federal Government would provide a status report concerning the ongoing review by the new administration and Department of Agriculture to the Court by May 4, 2001. Such report may obviously affect both the process and the substance of the roadless rule. The Court is therefore going to reserve its ruling on whether or not a preliminary injunction should issue until on or after May 4, 2001, so it can determine what, if any, actions taken by the Government bear on the issue of irreparable injury.

## V. ORDER

Based on the foregoing, and being fully advised in the premises,

The Court hereby **RESERVES ITS RULING** on Plaintiffs' Motions for Preliminary Injunction (Docket No. 19, 45–2) pending the issuance of the Government's status report on May 4, 2001;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Opposition Pleadings of Defendant–Intervenors (Docket No. 45–1) is **DENIED.**