State of IDAHO, ex rel. Dirk KEMPTHORNE, Governor; Pete T. Cenarrusa, Secretary of State; Alan G. Lance, Attorney General; J.D. Williams, State Controller; Marilyn Howard, Superintendent of Public Instruction, as the State Board of Land Commissioners; and Winston Wiggins, Acting Director, Idaho Department of Lands,

and

Governor Dirk Kempthorne, in his capacity of Chief Executive of the State of Idaho and President of the Idaho Board of Land Commissioners, Plaintiffs,

v.

UNITED STATES FOREST SERVICE, and Michael P. Dombeck, Chief United States Forest Service Defendants,

and

Idaho Conservation League, Idaho Rivers United, Sierra Club, the Wilderness Society, Oregon Natural Resources Council, Pacific Rivers Council, Natural Resources Defense Council, and Defenders of Wildlife, Defendant–Intervenors.

No. 01CV11.

United States District Court,
D. Idaho.

April 5, 2001.

Steven W Strack, DAG, Matthew J McKeown, Office of Attorney General, Natural Resources Division, David G High, DAG, James D Carlson, Office of Attorney General, Civil Litigation Division, Boise, ID, for Dirk Kempthorne, Pete T Cenarrusa, Alan G Lance, J D Williams, Marilyn Howard, Winston Wiggins, Dirk Kempthorne.

D Marc Haws, AUSA, U.S. Attorney's Office, Boise, ID, John W Watts, U.S. Dept of Justice, Environment and Natural Resources, General Litigation Section, Andrea L Berlowe, U.S. Dept of Justice, Environment & Natural Resources Division, General Litigation Section, John C Cru-

den, U.S. Dept of Justice, Environment & Natural Resources Division, Washington, DC, for Forest Service, US, Michael P Dombeck.

Douglas L Honnold, Timothy J Preso, Sanjay Narayan, Earthjustice Legal Defense Fund, Bozeman, MT, Nathaniel S.W. Lawrence, Natural Resources Defense Council, Olympia, WA, for Idaho Conservation League, Idaho Rivers United Inc., Sierra Club, Wilderness Society, Oregon Natural Resources Council, Pacific Rivers Council, Natural Resources Defense Council.

Douglas L Honnold, Timothy J Preso, Sanjay Narayan, Earthjustice Legal Defense Fund, Bozeman, MT, Laurence J Lucas, Law Offices of Laurence J Lucas, Boise, ID, Nathaniel S.W. Lawrence, Natural Resources Defense Council, Olympia, WA, for Defenders of Wildlife.

ORDER

LODGE, District Judge.

Pending before the Court in the above entitled matter is Plaintiffs'[1] Motion for Preliminary Injunction. Docket No. 15. Having reviewed all briefing submitted, as well as other pertinent documents in the Court's file, and having heard oral arguments the Court issues the following order.

## I. INTRODUCTION AND BACKGROUND

The Forest Service has been studying and evaluating roadless areas for nearly thirty (30) years. The process began in 1972 with a study called the Roadless Area Review and Evaluation ("RARE I"). *See California v. Block*, 690 F.2d 753, 758 (9th Cir.1982). A more comprehensive study called the Roadless Area Review and Evaluation II ("RARE II") was commenced in 1977. *Id.* This evaluation process resulted in the Forest Service's development of an "inventory" of roadless areas larger than five-thousand (5,000) acres. *Id.*

In RARE II, the Forest Service attempted to allocate inventoried roadless areas among various management regimes. *Id.* The Ninth Circuit Court of Appeals held, in part, that the Forest Service's action violated the National Environmental Policy Act ("NEPA") since it failed to include a site-specific analysis of the environmental impact that the management regimes would have on each specific roadless area. *Id.* Since *Block*, management decisions regarding inventoried roadless areas have been made on a site-specific basis as part of the forest planning process.

Through RARE II and the forest planning process, 9.3 million acres of national forests within Idaho have been identified as inventoried roadless areas. Docket No. 2, Strack Aff., Ex. 19a, Roadless Area Conservation Rule, Final Environmental Impact Statement ("FEIS") at 3–4. Outside of Alaska, Idaho has the highest total inventoried roadless areas in the nation, with Montana being next highest at 6.3 million acres. *Id.* Idaho also has the highest percentage of inventoried roadless areas. Seventeen percent (17%) of Idaho's total land area is located within national forest inventoried roadless areas. *Id.* at A–3. The next highest state is Utah, with 7.3 percent. *Id.* at A–4. Of the 9.2 million

1. Plaintiffs are individually identified as the State of Idaho; *ex rel.* Dirk Kempthorne, Governor, Pete T. Cenarrusa, Secretary of State, Alan G. Lance, Attorney General, J.D. Williams, State Controller, Marilyn Howard, Superintendent of Public Instruction, as Board of Land Commissioners; Winston Wiggins, Acting Director, Idaho Department of Lands; and, Governor Dirk Kempthorne, in his capacity as Chief Executive of the State of Idaho and resident of the Idaho Board of Land Commissioners.

acres of inventoried roadless areas within Idaho, 5,666,000 are currently allocated to a management prescription that allows road construction and reconstruction. *Id.* at A–3.

## II. FACTUAL AND PROCEDURAL HISTORY

The facts in this case are largely undisputed by the parties. On October 13, 1999, President Clinton directed the Forest Service to develop and prepare for public comment regulations to end road construction and to protect inventoried and uninventoried roadless areas across the entire national forest system. On October 19, 1999, in response to the Presidential directive, the Forest Service issued a "Notice of Intent to Prepare an Environmental Impact Statement." The NOI provided for scoping comments to be filed with the Forest Service within the following sixty (60) days.[2] Despite repeated requests from a number of parties, no request to extend this scoping period was granted.

On December 30, 1999, the State of Idaho filed its first suit against the United States Forest Service for failure to provide meaningful opportunity to participate in the process as required by the National Environmental Protection Act ("NEPA") and the National Forest Management Act ("NFMA"). On January 21, 2001, the Forest Service file a Motion to Dismiss the State's Complaint pursuant to Fed. R.Civ.P. 12(b)(1) arguing that the Court lacked subject matter jurisdiction because the case was not ripe for review since the agency had not taken any final agency action. On February 18, 2000, the Court granted the Forest Service's Motion finding no "final agency action" and after finding that the exceptions to the final agency action requirement were not applicable.[3] *State of Idaho, et al. v. United States Forest Service,* CV99–611–N–EJL, February 18, 2000, Memorandum Decision and Order.

In early May, 2000, the Forest Service released its 700–page DEIS, together with its proposed rule ("Proposed Rule"). 65 Fed.Reg. 30,276.[4] Sixty-nine days were allowed for comments. Despite substantial public reaction, the Forest Service again denied all requests for extensions of time. Docket No. 20 at 7.

On November 13, 2000, the Forest Ser-

2. In a letter to Forest Service staff dated October 28, 1999, Forest Service Chief Michael Dombeck instructed his staff to accelerate NEPA procedures, authorizing them to "take whatever executive actions are necessary" to complete the DEIS by March 2000, warning that "[w]e cannot afford to waste a single day." Letter from Michael Dombeck, Chief, USDA Forest Service, to Forest Service staff (Oct. 28, 1999) (cited in companion case *Kootenai Tribe of Idaho et al. v. Glickman, et al.,* CV 01–10, Docket No. 24, Neumeyer Aff., Ex. C, State of Idaho Comments, at 1.).

3. Specifically, this Court noted that it was unable to find a single case wherein a challenge to the scoping process was considered ripe for judicial review. *State of Idaho, et al. v. United States Forest Service,* CV99–611–N–EJL, February 18, 2000, Memorandum Decision and Order at 6.

4. The Proposed Rule purposed to regulate 54.3 million acres of "Inventoried Roadless Areas" and declared that at least 43 million acres of land would be immediately subject to prohibitions on road construction upon issuance of the Final Rule. 65 Fed.Reg. 30,276, 30,288. Moreover, the Proposed Rule provided for regulation of millions of additional acres of non-inventoried, unidentified "uncrowded areas where conservation of roadless characteristics may be desirable." 65 Fed. Reg. 30,277, 30,288. Finally, the Proposed Rule subjected the Inventoried Roadless Areas in the Tongas National Forest to these same processes as part of the five year review of the April 1999 Tongas Land and Resource Management Plan. 65 Fed.Reg. 30,288.

vice published its final EIS ("FEIS").[5] *Id.* And on January 5, 2001, the Forest Service released the Final Rule and Record of Decision that would implement the Roadless Initiative on May 12, 2001.[6] Docket No. 16, Winston Aff., Ex. A; 66 Fed.Reg. 3244–273, 36 C.F.R. § 294. The Final Rule adopted the FEIS's expansion of regulated areas that were not included in the DEIS and, unlike the proposal in the DEIS, applied immediately to the Tongas National Forest.

On January 9, 2001, Plaintiffs filed the present action seeking declaratory judgment and injunctive relief against the Federal Government for violations of the National Environmental Policy Act (NEPA), the National Forest Management Act (NFMA), and the Administrative Procedures Act (APA).[7] On March 7,2001, Plaintiffs filed the present Motion for Preliminary Injunction (Docket No. 15).

### III. STANDARD OF REVIEW

Plaintiffs' claims are all governed by the Administrative Procedure Act (APA), which provides for limited judicial review of agency action. *See* 5 U.S.C. §§ 702, 706. *See Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 376–78, 109 S.Ct. 1851, 1860–62, 104 L.Ed.2d 377 (1989); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983); *Friends of Clearwater v. Dombeck,* 222 F.3d 552, 560 (9th Cir.2000). Under the APA, the Court may overturn agency action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or in excess of its statutory jurisdiction or authority. 5 U.S.C. § 706(2)(A), (C); *Idaho Farm Bureau v. Babbitt,* 58 F.3d 1392, 1401 (9th Cir.1995). The standard of review is "highly deferential" and "presumes an agency's action to be valid." *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir. 1976). A court reviewing an APA challenge, therefore, begins with the "presumption to which administrative agencies are entitled—that they will act properly and according to law." *FCC v. Schreiber,* 381 U.S. 279, 289, 85 S.Ct. 1459, 1470, 14 L.Ed.2d 383 (1965).

Section 705 of Title 5 of the United States Code permits a reviewing Court to postpone the effective date of agency ac-

---

5. It is undisputed that the FEIS differed from the DEIS in several aspects. First, the FEIS broadened the scope of the Prohibition Rule to apply to all inventoried roadless areas, not just the uncrowded portions of inventoried roadless areas. *See* Docket No. 2, Strack Aff., Ex. 19a, at XI. Second, it altered the preferred alternative, choosing Prohibition Alternative 3, which prohibits road construction, road reconstruction, and timber harvest except for stewardship purposes. *See* Docket No. 20 at 7. Third, the FEIS eliminated all analysis relating to the Procedural Rule. *See* Docket No. 2, Strack Aff., Ex. 19a, at XI. Instead, the Procedural Rule was incorporated in the final Forest Planning Regulations adopted on November 9, 2000. Finally, the size of the inventoried roadless areas changed—the DEIS stated that Inventoried Roadless Areas totaled 54.3 million acres of land, the FEIS added an additional 4.2 mil-

lion acres of Inventoried Roadless Areas to that total. Docket No. 20 at 7–8.

6. On January 20, 20001, President Bush issued an order postponing by sixty (60) days the effective date of all of the Clinton Administration's 11th hour regulations and rules that had not yet been implemented. Pursuant to that order, Secretary Veneman postponed the Final Rule's effective date until May 12, 2001. *See* 66 Fed.Reg. 8899 (Jan. 29, 2001).

7. Specifically, the State of Idaho and Governor Dirk Kempthorne seek an order from this Court declaring that the Final Rule violates NEPA and an injunction barring the implementation of the Final Rule and remanding the Final Rule to the Forest Service so that the Forest Service can comply with its obligations under NEPA. Docket No. 1 at 2.

tion pending conclusion of the review proceedings. The test to be applied for issuing such a stay or injunction pending judicial review is the same as that applied to a request for preliminary injunction.

■ In determining whether to award a preliminary injunction, the court must balance the plaintiff's likelihood of success against the relative hardship to the parties. *See e.g., Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999); *Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1118 (9th Cir.1999). Specifically, Plaintiffs must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of the hardships tips in its favor. *See Idaho Sporting Congress v. Alexander,* 222 F.3d 562, 565 (9th Cir.2000). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Id.*

## IV. ANALYSIS

Plaintiffs seek a preliminary injunction challenging the promulgation of the Roadless Rule as violative of NEPA, NFMA, and the APA. Intervenor Defendant Idaho Conservation League (hereinafter referred to as "ICL") resists the issuance of a preliminary injunction arguing that, as a threshold matter, the Court lacks jurisdiction. ICL further resist the issuance of a preliminary injunction on the basis that Plaintiffs' challenges are meritless, and that enjoining the Roadless Rule would cause irreparable harm to the environment. The Federal Defendants take no position on the merits of the case but argue that agency rulemaking is entitled to substantial discretion and that injunctive

relief is not necessary prior to May 12, 2001.

## 1. The Court Has Jurisdiction Over Plaintiffs' Claims

■ As a threshold matter, this Court must first address ICL's challenge to the jurisdiction of this Court. ICL first argues that Plaintiffs, having shown no concrete injury, lack standing, and the Court thus lacks subject matter jurisdiction. Docket No. 37 at 1–3. In addition, in determining jurisdiction, it is the obligation of the Court to raise ripeness issues sua sponte if not raised by the parties.

## 1. Plaintiffs Have Standing

The Intervenors contend that the Plaintiffs do not have standing to challenge the adequacy of the Government's environmental impact statement regarding the Roadless Rule. Docket No. 37 at 1–3.

■ To satisfy Article III's standing requirements, a Plaintiff must show:

(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl., Serv.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). In addition to these constitutional requirements, a plaintiff bringing suit under the APA for a violation of NEPA must show that his alleged injury falls within the "zone of interests" that NEPA was designed to protect. *Douglas County v. Babbitt,* 48 F.3d 1495, 1499 (9th Cir.1995). The Intervenors argue that Plaintiffs have met neither the constitutional nor prudential standing requirements.

### a. Injury in Fact

■ The right claimed by Plaintiffs is, *inter alia*, the right to have the Forest Service analyze reasonable alternatives, conduct a meaningful notice and comment process, and adequately analyze cumulative impacts, before making a decision affecting the environment, as required by NEPA.[8] Plaintiff complains that the Roadless Rule has denied the State and other interested persons the "hard look" NEPA compliance is designed to ensure with respect to the environmental impact of a proposed federal agency action. In *Mumma*, 956 F.2d at 1514,[9] the Ninth Circuit found this type of harm to be acknowledged by Congress and identified violations of NEPA's procedural requirements to be distinct and palpable harms—as opposed to abstract, conjectural or hypothetical.[10] That Court went on to find that, pursuant to NEPA and the NFMA, procedural violations must be deemed *immediate*, and not speculative. *Id.* at 1516.

Finally, the *Mumma* Court found that so long as plaintiffs can allege that the injury would be felt by individual members, as opposed to a diffuse, collective interest, personal injury is sufficient to confer standing. The State of Idaho, through the Idaho Department of Lands, is charged with 2,465,000 acres of state endowment trust land, approximately 200,000 acres of which is intermingled with or adjacent to national forest lands and approximately 11,000 acres of which is surrounded by lands designated by the United States Forest Service as inventoried roadless areas. Docket No. 16, Wigging Aff. at ¶¶ 3–4. The State argues that it has a concrete interest in the management of these lands to protect forest health and secure maximum long term financial return and from the harm to these areas that would result if the Roadless Rule affected either reasonable road access across adjacent and surrounding national forest lands or withdrew active management from national forest lands. *Id.* at ¶¶ 5–6.

Based on the Ninth Circuit's holding in *Mumma*, and Plaintiffs' showing that they have a "sufficient geographical nexus to the site of the challenged project that [they] may be expected to suffer whatever environmental consequences this project may have," *City of Davis v. Coleman*, 521

8. The statutes sought to be enforced in this case, of course, are NEPA and the NFMA (via Section 10 of the APA). Section 10(a) of the APA provides that "a person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In cases arising under the APA, the standing requirement has been read to mean that plaintiffs must show " 'the challenged action ha[s] caused them injury in fact' and that the injury is 'to an interest arguably within the zone of interests to be protected or regulated by the statutes that the agencies were claimed to have violated.' " *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1514 n. 12 (9th Cir.1992).

9. In *Mumma*, the defendants asserted that the plaintiffs lacked standing to challenge a recommendation not to designate certain inventoried roadless areas as "wilderness areas" because the injuries asserted were not within the scope of NEPA, the injuries were too remote and speculative, and the plaintiffs could not establish that their personal interests were affected by the agency action.

10. *See also Trustees of Alaska v. Hodel*, 806 F.2d 1378, 1380–82 (9th Cir.1986) (holding that because "NEPA is essentially a procedural statute designed to ensure that environmental issues are given proper consideration in the decisionmaking process," injury alleged to have occurred as a result of violating this procedural right confers standing.); *Friends of the Earth v. United States Navy*, 841 F.2d 927, 931 (9th Cir.1988) (noting that the Ninth Circuit "has long recognized that failure to follow procedures designed to ensure that the environmental consequences of a project are adequately evaluated is a sufficient injury in fact to support standing").

F.2d 661, 671 (9th Cir.1975).[11] Accordingly, the Court finds that Plaintiffs have sufficiently met the personal injury requirement set forth by the United States Supreme Court.

### b. Fairly Traceable and Likely to be Redressed

ICL next argues that Plaintiffs have shown no causal connection between the Roadless Rule and their alleged injuries and that Plaintiffs cannot show that their injury will be redressed by a favorable decision of this Court.

In the instant case, the alleged injury—restricted access, wildfires, disease outbreaks, and insect infestation, resulting from national changes in active local management plans prohibiting road construction, reconstruction and/or timber harvesting, purportedly as result of statutory violations—would not have occurred *but for* the decision of the Forest Service in pushing the implementation of the Roadless Rule on a "fast track." In this respect, the fact that the alleged injury may never occur is irrelevant. The asserted injury is that environmental consequences might be overlooked and reasonable alternatives ignored as a result of the deficiencies in the FEIS and ROD. *See Mumma,* 956 F.2d at 1518. *See also International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795, 811–12 (D.C.Cir.1983) ("the suggestion that effective enforcement of [the Act] will not have [effect] directly contravenes the congressional judgment underlying the Act"); *Munoz–Mendoza v. Pierce,* 711 F.2d 421, 428 (1st Cir.1983).

Based on the Ninth Circuit's holding in *Mumma,* this Court finds that Plaintiffs

have satisfied the three prongs necessary to confer standing.

### 2. The Matter is Ripe for Judicial Review

The parties have not raised the question of ripeness. However, the Court has been put in an unusual situation with this case and finds it necessary to address this issue. As previously noted, the Forest Service released the Final Rule and Record of Decision that would implement the Roadless Initiative on January 5, 2001. Docket No. 16, Winston Aff., Ex. A; 66 Fed.Reg. 3244–273, 36 C.F.R. § 294. However, prior to its implementation, President Bush issued an order postponing the effective date of the rule by sixty (60) days. As a result of that order, Secretary Veneman postponed the Final Rule's effective date until May 12, 2001, pending full review of the rule. *See* 66 Fed.Reg. 8899 (Jan. 29, 2001). During the course of the instant litigation, the Government has taken no position on the merits of Plaintiffs case and has asked this Court to postpone ruling on the preliminary injunction until the new administration has had the opportunity for a full review and has the opportunity to inform the Court of its position on the preliminary injunction motion.

■ Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. This deficiency must be raised sua sponte if not raised by the parties. *Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir.1990). The Supreme Court has noted that "a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review un-

---

**11.** *See Douglas County,* 48 F.3d at 1500 n. 5 (stating that the geographic nexus test is the

same as the concrete interest test).

der the APA until ... its factual components [have been] fleshed out [ ] by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm them."

■ Plaintiffs are challenging the Roadless Rule, arguing that the rule-making process was completed in violation of, *inter alia,* NEPA. While the Government has presently withdrawn its position on the Roadless Rule, there is no dispute that the Final Rule and Record of Decision have been published in the Federal Register, and but for the present stay, would be in effect. Accordingly, waiting until the Government takes "some further position" on the Roadless Rule is not an adequate remedy. Therefore, this Court finds that the action is ripe for review.

## 2. Likelihood of Success on the Merits

ICL argues that Plaintiffs have no likelihood of success on the merits for two reasons. First, ICL argues that the alleged NFMA violations are without merit because the Forest Service promulgated the Roadless Rule pursuant to its regulatory authority under the 1897 Organic Act and; accordingly, NFMA's forest planning requirements do not apply. Second, ICL argues that the alleged NEPA violations are without merit because the Roadless Rule did not require the preparation of an EIS.

## 1. Promulgation of the Roadless Rule

■ First, ICL argues that NFMA's planning requirements do not apply to the Roadless Rule because the Forest Service promulgated the Roadless Rule "pursuant to its regulatory authority under the 1897 Organic Act, 16 U.S.C. § 551." Docket No. 37 at 11–14. Plaintiffs argue that this

is an unusual argument in light of the procedural history of this and related cases and in light of the 13 months spent developing the FEIS currently at issue here. Docket No. 36 at 3.

During oral argument, ICL suggested that the governmental agency had an option in determining what course it to follow—an EIS process or a rule-making process. Presumably, the Intervenors were suggesting that the "rule-making" process, could be undertaken pursuant to the Organic Act, and would not require the preparation of an EIS or compliance with NFMA. The Court finds no merit to this argument.

First, even if there is merit to ICL's argument, the Forest Service explicitly states its decision to "choose the EIS process" when it states its reliance upon NEPA as a source of authority for the Roadless Rule. *See* Docket No. 16, Wiggins Aff., Ex. A, 66 Fed.Reg. 3244 ("Preparation of the record of decision is required by the Council on Environmental Quality regulations (40 C.F.R. 1505.2) *implementing the National Environmental Policy Act (NEPA) (42 U.S.C. 4321)* ") (emphasis added). NEPA requires federal agencies to abide by certain procedural requirements in carrying out the planning process. One of these requirements is that an EIS be prepared under 36 C.F.R. § 219.10(b). *See Oregon Natural Res. Council v. Lowe,* 109 F.3d 521, 524 (9th Cir.1997).

Furthermore, NFMA, 16 U.S.C. § 1600, et seq. and the Department of Agriculture's implementing regulations require the Forest Service to prepare an EIS for any addition, modification, removal or continuation of the decisions embodied in a forest plan.[12] There can be no dispute

---

**12.** *See* 36 C.F.R. §§ 219.10(b), 219.12(a) (2000); *superseded by* 36 C.F.R. § 219.9(d)

(2001) ("The responsible official must ... prepare an environmental impact statement to

that promulgation of the Roadless Rule will add to, modify or remove decisions embodied in forest plans governing the management of the national forests. In fact, the Rule acknowledges it purpose to "stop" certain activities and to "supercede" existing forest plan management direction. *See* Docket No. 2, Strack Aff., Ex. 19A at ES–1; 66 Fed.Reg. 3250 (Jan. 12, 2001).

Finally, while it is true that NFMA did not supercede § 551 of the Organic Act, the evidence suggests that the two are supposed to complement one another. *See e.g.,* Docket No. 16, Wiggins Aff., Ex. A, 66 Fed.Reg. 3250 (in response to questions regarding whether the rule would supersede forest plans, NFMA, land management planning regulations, and statutory authority, the Forest Service responded by noting that *"[t]he use of rulemaking to address the conservation of inventoried roadless areas is consistent with the NFMA implementing regulations.")* (emphasis added); *id.* at 3252 (in response to questions regarding authority to prohibit road construction through this rulemaking process, "the Forest Service noted that NFMA reaffirmed multiple-use and sustained-yield as the guiding principles for land management planning of National Forest System lands" and indicated that *NFMA "complement[s] the long-standing authority of the Secretary to regulate the occupancy and use of the National Forest System (16 U.S.C. 551)"*) (emphasis added). ICL's argument that the Forest Service can by-pass the NEPA process in implementing a rule affecting decisions embodied in local forest plans is novel and does not persuade this Court.

### 2. The Roadless Rule Required an EIS

■ Second, ICL argues that no EIS was required for the Roadless Rule. Dock-

et No. 37 at 6–11. Specifically, ICL argues that the Roadless Rule is not subject to NEPA and Plaintiffs' claims fail under *Douglas County v. Babbitt,* 48 F.3d 1495, 1505 (9th Cir.1995), because the Roadless Rule does not commit resources to some affirmative human development of the environment, does not change existing environmental conditions, and does not alter the environmental status quo. Plaintiffs argue that the cases cited by the Intervenors are distinguishable and that the Roadless Rule is not a rule involving government inaction. Docket No. 36 at 3.

42 U.S.C. § 4332(c) requires all agencies of the federal government, "to the fullest extent possible," to comply with EIS requirements when they take "major federal actions significantly affecting the quality of the human environment." NFMA and the Department of Agriculture's implementing regulations require the Forest Service to prepare an EIS for any addition, modification, removal or continuation of a decision embodied in a forest plan. 36 C.F.R. §§ 219.10(b), 219.12(a) (2000); *superseded by* 36 C.F.R. § 219.9(d) (2001); Forest Service Handbook, Title 1909.15, § 20.6, *see also Oregon Natural Res. Council,* 109 F.3d at 524 ("In carrying out the planning process, the Forest Service is also required to abide by certain procedural requirements imposed by the NEPA. One of these is the requirement that an EIS be prepared ... [u]nder 36 C.F.R. § 219.10(b).").

There is no doubt in the Court's mind that the instant case is distinguishable from those cases cited by ICL that stand for the proposition that NEPA procedures do not apply to federal actions that do nothing to alter the natural physical environment, conserve the environment, or prevent human interference with the envi-

---

add, modify, remove, or continue in effect the

decisions embodied in a [forest] plan").

ronment.[13] Promulgation of the Roadless Rule will add to, modify and remove decisions embodied in forest plans governing the management of the national forests. In the third paragraph of the FEIS's executive summary, the Forest Service acknowledged that the blanket prohibition on road construction, reconstruction, and timber harvesting (subject to minor exceptions) in inventoried roadless areas departs significantly from nearly every local forest plan when it stated that "[t]he purpose of this action is to immediately *stop* activities that pose the greatest risks to the social and ecological values of the inventoried roadless areas." Docket No. 2, Strack Aff., Ex. 19A at ES–1 (emphasis added). The Forest Service further recognized its governmental "action" in the Record of Decision wherein it notes that the rule "supersede[s] existing forest plan management direction." 66 Fed.Reg. 3250 (Jan. 12, 2001).

While it is true that the ultimate goal of the Roadless Rule is to "provide lasting protection for inventoried roadless areas within the National Forest System," *id.,* the Roadless Rule is not an action that

does not alter the "environmental status quo." In fact, the Roadless Rule, in changing or limiting existing active management in the national forest, drastically alters the current status quo.

While the Court acknowledges the common sense principle that NEPA does not require an EIS every time the Government decides *not* to do something;[14] an action that serves to "leave nature alone" by preventing the enactment of land management plans that provide for road construction, reconstruction or timber harvesting, despite recommendations by local officials, will certainly have a demonstrable impact on the physical environment—the world around us, so to speak—and is the very action upon which Congress intended NEPA to apply.[15] To find otherwise would be to allow the Government to "shunt aside" their responsibilities in the "bureaucratic shuffle" and "accomplish a goal without allowance of the procedure required by law." *See Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.,* 426 U.S. 776, 777, 96 S.Ct. 2430, 2433, 49 L.Ed.2d 205 (1976). Based on the forego-

---

13. *See Burbank Anti–Noise Group v. Goldschmidt,* 623 F.2d 115, 116 (9th Cir.1980) (federal loans for continued operation of airport does not trigger EIS); *Sierra Club v. F.E.R.C.,* 754 F.2d 1506, 1509 (9th Cir.1985) (preliminary permit for hydro-dam does not trigger NEPA); *Upper Snake River v. Hodel,* 921 F.2d 232, 235 (9th Cir.1990) (discretionary agency action that does not alter status quo does not trigger NEPA); *National Wildlife Fed'n v. Espy,* 45 F.3d 1337 (9th Cir.1995) (transfer of land from federal to private ownership without change in land use not subject to NEPA); *Douglas County,* 48 F.3d at 1505 (protection of critical habitat for endangered species does not trigger NEPA requirements); *Bicycle Trails Council of Marin v. Babbitt,* 82 F.3d 1445, 1446 (9th Cir.1996) (closure of bicycle trail does not trigger EIS); *Northcoast Envtl. Ctr. v. Glickman,* 136 F.3d 660, 669 (9th Cir.1998) (conservation of rare timber stands does not require EIS).

14. Section 102(2)(c) of NEPA requires federal agencies to prepare an EIS for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332. The Council on Environmental Quality regulations implementing NEPA define the term "human environment" to mean "the natural and physical environment and the relationship of people with that environment." 40 C.F.R. § 1508.14.

15. In *Metropolitan Edison Co. v. People Against Nuclear Energy,* 460 U.S. 766, 772, 103 S.Ct. 1556, 1560, 75 L.Ed.2d 534 (1983), the United States Supreme Court held that Congress intended NEPA to apply only where a federal action will have a demonstrable impact on the physical environment, "the world around us, so to speak."

ing, the Court finds ICL's argument without merit.

### 3. Plaintiffs' Procedural Challenges

Last, ICL argues that Plaintiffs have failed to demonstrate a likelihood of success on the merits because Plaintiffs' allegations of procedural violations are without merit. Specifically, Intervenors argue (1) that the public comment process was sufficient both in its scoping process and information dissemination; (2) that the Forest Service adequately analyzed reasonable alternatives, and (3) that the FEIS adequately discussed mitigation options. Docket No. 37 at 14–18. Plaintiffs argue that ICL's comments do not rectify the inadequacy of the FEIS. Docket No. 36 at 4.

■ The Ninth Circuit employs a "rule of reason" that asks whether an EIS contains a "reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Oregon Envtl. Council v. Kunzman*, 817 F.2d at 484, 492 (9th Cir.1987). A reviewing judge must make "a pragmatic judgment whether the EIS's form, content and preparation foster both informed decision-making and informed public participation... Once satisfied that a proposing agency has taken a 'hard look' at a decision's environmental consequences, the review is at an end." *Block*, 690 F.2d at 761.

### a. Public–Comment Process

■ Intervenors submit that the Forest Service's failure to grant extensions of

time is not sufficient to justify relief sought by the State and that the FEIS contained the basic information necessary to assess the environmental impacts of the proposed action. Plaintiffs argue that "[w]hile it is true the agency did not respond to requests for additional time, the significance of that nonresponse for present purposes lies in its reflecting on an administrative predetermination entirely incompatible with conducting the objective, thoroughgoing EIS process required under NEPA." Docket No. 36 at 5. Plaintiffs further submit that while ICL trivializes the necessity of certain information, the gravamen of their claim is that there was insufficient information to adequately participate in the comment process. *Id.*

The Forest Service is required to "involve the public in preparing and implementing their NEPA procedures," 40 C.F.R. § 1506.6, and invite the participation of affected state and local governments, as well as Indian Tribes. 40 C.F.R. § 1501.7(a)(1). This requires agencies to notify the public of a rulemaking, allow an opportunity to comment meaningfully on the proposed rule, and consider these comments. 5 U.S.C. § 553(b)-(c).

It appears from this record that the message disseminated during the development of the EIS was perceived by the public to be, at best, confusing and, at worst, inadequate.[16] Plaintiffs currently reflect concerns regarding, *inter alia*, identification of the inventoried roadless areas,[17] the inadequacy of information pre-

---

**16.** *See e.g.,* this Court's analysis in companion case *Kootenai Tribe of Idaho et al. v. Glickman, et al.,* CV 01–10, in its April 5, 2001, Memorandum Decision and Order at § IV.B.1.b.

**17.** *See* Docket No. 20 at 13 ("The reader of the FEIS cannot even identify with any certainty the specific lands within Idaho that will

be subject to the new prohibitions ... [the maps] do not identify each individual [inventoried roadless area] and they do not provide basic information such as acreage, elevation, forest cover, or the location of the [inventoried roadless areas] in relation to existing classified and unclassified roads.")

sented during the scoping process,[18] and the inadequacy of the public comment periods.[19]

The 45 day requirement for public comment under NEPA is statutorily contemplated as a minimum time frame to be set apart for meaningful disclosure. At this point, the evidence is that the Forest Service did not, and in fact could not, provide meaningful disclosure as descriptions and maps of the areas to be impacted by the rule were unavailable[20] and Forest Service representatives were ill-prepared to answer the questions and concerns of the general public.[21] Neither the number of meetings nor the volumes of comments are instructive by themselves if the evidence suggests that the decision making process was used to rationalize or justify decisions already made. NEPA requires full disclosure of all relevant information before there is meaningful public debate and oversight.

The Court previously admonished the parties that time could not be of the essence on something of this magnitude and the action taken strongly suggests that this was a political decision pre-determined in its outcome. The Court acknowledges that the roadless issues involve many different well intentioned views but this only strengthens the argument that the best interests of the country and environment need to be given due consideration.

The FEIS is approximately 700 pages in length and is applicable to two percent (2%) of the land mass of the United States—twenty-eight (28%) of National Forest System lands. One million six hundred thousand comments were submitted in response to the roadless proposal. In the arguments before this Court, it was pointed out that all of the public meetings in Idaho occurred within 12 business days of the end of the first 60-day comment period. It was further pointed out that many of the comments were received within the last week of the time given and no responses were provided. The Court cannot fathom how such representations can support a finding that the Forest Service gave the public's concerns due consideration. In fact, this is strong evidence that because of the hurried nature of this process the Forest Service was not well informed enough to present a coherent proposal or meaningful dialogue and that the end result was pre-determined. Justice hurried on a proposal of this magnitude is justice denied.

Based on the foregoing, the Court conclusively finds that the comment period was grossly inadequate and thus deprived the public of any meaningful dialogue or

---

**18.** *See id.* at 14 ("[T]he lack of maps and other information that could only be found in scattered forest planning documents effectively prohibited the State and others from meaningful participation in the NEPA process.")

**19.** *See id.* at 12 ("Not only did the Forest Service ignore the pleas for additional time, it refused to even explain why additional time could not be granted.")

**20.** State maps of the potentially regulated areas were not made available until January 18, 2000, nearly a month after the NEPA scoping process and after the public comment period had ended.

**21.** Such ill-preparation does not surprise the Court given the fact that similar, although much smaller federal actions, have taken time frames of up to six years to complete. For example, compare the Columbia Basin Ecosystem Management Project, a project of approximately the same size as this, from initiation to the final EIS, six years. Here, about twelve months. The Boone National Forest salvage sale, one and one-half years in scoping alone. The Black Hills Forest Plan revision, a project to apply to 1.2 million acres, from initiation to final EIS, six years, six months.

input into the process—an obvious violation of NEPA.

### b. Range of Alternatives

■ ICL next dismisses the Plaintiffs' concern over the lack of any FEIS "action" alternative not entailing a total prohibition on road construction or reconstruction in inventoried roadless areas. Docket No. 37 at 16–17. Plaintiffs argue that the Forest Service pre-determined the outcome of the alternative analysis by failing to consider a broader range of alternatives. Docket No. 36 at 6–7.

The alternative section is "the heart of the environmental impact statement," 40 C.F.R. § 1502.14; hence, "[t]he existence of a viable but unexamined alternative renders an environmental impact statement inadequate." *Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1057 (9th Cir.1985). And, while the practicalities of the requirement are difficult to define, NEPA requires all agencies of the Federal Government, to the fullest extent possible, to "[s]tudy, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E). The Ninth Circuit has instructed district courts, in determining whether a particular EIS has met this demand, to ascertain (1) whether the federal agency has sufficiently detailed information to make its decision in light of potential environmental consequences and (2) whether the federal agency has provided the public with information on the environmental impact of the proposed action and encouraged public participation in the development of that information. *See e.g., Mumma,* 956 F.2d at 1520; *Kunzman,* 817 F.2d at 492; *Citizens for a Better Henderson,* 768 F.2d at 1056. As a result, an agency must look at every reasonable alternative, with the range dictated by the

"nature and scope of the proposed action," *Block,* 690 F.2d at 761, and sufficient to permit a reasoned choice and informed decision making. *See Save Lake Washington v. Frank,* 641 F.2d 1330, 1334 (9th Cir.1981).

Plaintiffs' contention is that Defendants failed to satisfy this NEPA requirement because the FEIS considers only three action alternatives—all of which ban road construction and reconstruction, and a single "no action alternative"—which was included as a required point of reference rather than a seriously considered alternative. Plaintiffs argue that the alternatives predetermined the outcome of the alternative analysis and served to justify a decision already made rather than assess the environmental impact of proposed agency actions. Docket No. 20 at 20–24. ICL argued that the Forest Service studied a range of reasonable alternatives in light of the stated purpose of the project.

It appears to the Court that absent the elements directed solely at the Tongas National Forest and various procedural elements, which were ultimately moved into a separate rule and not included in the FEIS, the DEIS actually only examined three action alternatives. Each of three alternatives banned road construction and reconstruction in inventoried roadless areas and only differed as to the level of restriction imposed on timber harvesting. The Court recognizes that an agency need not evaluate alternatives that are inconsistent with policy objectives, *see Seattle Audubon Soc'y v. Moseley,* 80 F.3d 1401, 1404 (9th Cir.1996), however, there is no evidence before the Court why the Forest Service failed to consider alternatives that were consistent with the stated purpose of the rule—"to prohibit activities that pose the greatest risk to the social and ecological values of inventoried roadless areas"— but did not include a total prohibition on

road construction. Based on a failure to even consider other alternatives, it is unclear from the record whether less prohibitive restrictions could have fulfilled the goal of protecting the environmental integrity of roadless areas while avoiding adverse effects on forest health resulting from lack of access for forest health and management treatments.

▬ In *Block*, the Ninth Circuit criticized the Forest Service for ending the decisional process inquiry at "the beginning" by "uncritically assum[ing] that a substantial portion of the RARE II areas should [contain a ban on road building] and consider[ing] only those alternatives with that result." *Id.* 690 F.2d at 767. Because an agency may not define the objectives of its action in terms so unreasonably narrow that only one alternative would accomplish the goals of the agency action, *see City of Carmel–by–the–Sea v. United States Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir.1997), the Court finds it likely that Plaintiffs would succeed on the merits of their claim that the Forest Service violated NEPA by failing to analyze a reasonable range of alternatives.

### c. Mitigation Options

▬ Finally, ICL argues that the Forest Service provided a full discussion of unavoidable adverse impacts, as well as potential mitigation measures. Docket No. 37 at 17–18. Specifically, ICL argues that the FEIS includes over 65 pages discussing, in detail, the possible adverse impacts of the Roadless Rule on forest health and fuel management treatments. *Id.* at 18. Plaintiffs argue that while it is true that the FEIS identifies the negative con-

sequences of designated alternatives, the FEIS fails to identify measures designed to minimize the impact of those consequences.

The duty to discuss cumulative impacts in an Environmental Impact Statement is mandatory. *See* 40 C.F.R. § 1502.16. Similarly, the duty to discuss ways to mitigate adverse environmental impacts with regard to *each* alternative, if not already part of analyzing the comparative environmental effect of the various alternatives, is mandatory. *Id.*; 40 C.F.R. § 1502.14.

The Forest Service recognized in the FEIS that "the Roadless Rule together with the other proposed and finalized rules and policies could have cumulative effects." FEIS, Vol. 1 at 3–396. Accordingly, the Forest Service was required to include a useful analysis of these projects. *See Carmel-by-the Sea*, 123 F.3d at 1160 (holding that an EIS must include a "useful analysis of the cumulative impacts of past, present and future projects."). A cursory and general discussion of the potential impacts will not do. Conclusory remarks are similarly insufficient.

Furthermore, despite the arguments of ICL, the Court agrees with Plaintiffs that the portions of the FEIS cited by ICL recognize negative consequences of designed alternatives but do not identify measures designed to minimize the impact of the identified consequences.

Based on the foregoing, the Court finds it likely that Plaintiffs would succeed on the merits of their claim that the Forest Service's failure to adequately analyze the cumulative impacts and mitigation measures of its proposal violates NEPA.[22]

---

22. Plaintiffs additionally argued that under *Block*, 690 F.2d 753, the Forest Service violated NEPA by failing to perform site-specific analysis. Docket No. 20 at 6. Intervenors argued that no-site specific analysis was re-

quired because the Roadless Rule made no "critical decisions" with regard to site-development and made no "irreversible and irretrievable commitment" of the availability of resources to a project at a particular site.

### 3. Possibility of Irreparable Injury

 Having previously found that Plaintiffs have demonstrated a strong likelihood of success on the merits, under the Ninth Circuit's test for equitable relief Plaintiffs need only make a minimal showing of harm to justify an injunction. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir.1988).

Plaintiffs argue that both the merits and the balance of harms weigh strongly in favor of an injunction halting implementation of the Roadless Rule. Docket No. 20 at 30–32. The ICL Intervenors argue that issuance of an injunction will do more environmental harm than good and that Plaintiffs' harms are illusory. Docket No. 37 at 4–6. The Court finds, however, there is merit in the wisdom of the First Circuit Court of Appeals analysis that the purpose of NEPA "is to require consideration of environmental factors before project momentum is irresistible, before options are closed, and before agency commitments are set in concrete." *Massachusetts v. Watt*, 716 F.2d 946, 953 (1st Cir.1983).

Nevertheless, after reviewing the record and hearing oral argument on the motion, the Court is of the opinion that a decision as to whether or not there has been irreparable injury is arguably premature. At the hearing on this motion, counsel for the Government *committed* to the Court that the Federal Government would provide a status report concerning the ongoing review by the new administration and Department of Agriculture to the Court by May 4, 2001. Such report may obviously affect both the process and the substance of the roadless rule. The Court is there-fore going to reserve its ruling on whether or not a preliminary injunction should issue until on or after May 4, 2001, so it can determine what, if any, actions taken by the Government bear on the issue of irreparable injury.

### V. ORDER

Based on the foregoing, and being fully advised in the premises,

The Court hereby **RESERVES ITS RULING** on Plaintiffs' Motion for Preliminary Injunction (Docket No. 15) pending the issuance of the Government's status report on May 4, 2001.

---

Docket No. 55 at 11. It is not clear, at this time, whether the Roadless Rule is the type of concrete development proposal that warrants such detailed analysis or whether the detailed analysis should be deferred until a critical decision as been made to act on site development. However, based on this Court's previous finding that Plaintiffs have otherwise established a high likelihood of success of establishing a number of NEPA violations, the Court need not resolve this issue at this time.